JOHN C. LAMB *vs.* THE STATE OF MARYLAND.

*Abortion—Solicitation—Act of* 1868, *ch.* 179.

The advising, soliciting and inciting a pregnant woman to take certain noxious and poisonous-drugs and preparations, for the purpose of causing an abortion, is not an indictable offence under the Act of 1868, ch. 179, which makes it penal knowingly to sell, or cause to be sold, any medicine for the purpose of producing an abortion, or to use or cause to be used any means whatsoever for that purpose.

APPEAL as upon Writ of Error, from the Circuit Court for Baltimore County.

The traverser was indicted as follows:

The jurors of the State of Maryland for the body of Baltimore County, do on their oath present that John C. Lamb, late of Baltimore County aforesaid, on the first day of April, in the year of our Lord one thousand eight hundred and eighty-five, at Baltimore County aforesaid, in and upon the body of Rachel A. Taylor, then and there being a pregnant woman, unlawfully and wilfully did then and there attempt to commit an offence prohibited by law, to wit, did then and there attempt to commit the offence of miscarriage and abortion of the said Rachel A. Taylor, pregnant with child as aforesaid; and in such attempt, did then and there do a certain overt act towards the commission of said offence, to wit, did then and there use, employ, furnish and supply and deliver, knowingly and wilfully, to the said Rachel A. Taylor, a large quantity of a certain substance, medicine and noxious and poisonous drugs and preparations, to the jurors aforesaid unknown, for the purpose of causing the miscarriage and abortion of her, the said Rachel A. Taylor then and there pregnant

with child as aforesaid; but that the said John C. Lamb did then and there fail in the perpetration of said offence, against the peace, government and dignity of the State.

And the jurors aforesaid, upon their oath aforesaid, do further present, that the said John C. Lamb, on the first day of April, in the year one thousand eight hundred and eighty-five, at Baltimore County aforesaid, unlawfully and wickedly did advise, solicit and incite one Rachel A. Taylor, then and there being a pregnant woman, to take and swallow a large quantity of a certain substance, medicine, and noxious and poisonous drugs and preparations, to the jurors aforesaid unknown, for the purpose of causing the miscarriage and abortion of her, the said Rachel A. Taylor, then and there pregnant with child as aforesaid, and thereby to commit the crime of abortion against the peace, government and dignity of the State.

The traverser demurred to the counts of the indictment, and the demurrer being overruled, he was put upon his trial, and the Court trying the law and the facts, acquitted him on the first count, and convicted him on the second. He was sentenced to be confined for two years in the House of Correction. On the petition of the traverser, the record of the case was removed to this Court as upon writ of error.

The cause was argued before ALVEY, C. J., YELLOTT, STONE, MILLER, IRVING, and BRYAN, J.

*Benjamin Kurtz,* for the traverser.

The demurrer to the second count should have been sustained, because the offence therein charged is a bare solicitation, (whether by word, gesture, wink or other overt act not being alleged) to commit what, at common law, when consummated, was only a misdemeanor. Nor does it belong to that graver class of common law misdemeanors, involving breaches of the peace, and producing

public scandal and corruption, solicitations to commit which, have been held in themselves to be substantive offences, and indictable. 1 *Wharton Cr. Law,* (9*th Ed.*) secs. 179, 181, 195; 1 *Bishop Cr. Law,* secs. 204, 740, 744, 760, 762, 764, 767, 768; *Smith vs. Commonwealth,* 51 *Penn. St.,* 209; *Rex vs. Butler,* 6 *Carr. & P.,* 368; *Kelly vs. Commonwealth,* 1 *Grant, (Pa.,)* 484, 487; *Stabler vs. Commonwealth,* 95 *Pa. St.,* 318; *Cox vs. People,* 82 *Ill.,* 191; *Commonwealth vs. Willard,* 22 *Pick.,* 476; *Commonwealth vs. Flagg,* 135 *Mass.,* 545; *McDade vs. People,* 29 *Mich.,* 50; *People vs. Murray,* 14 *Cal.,* 159; *Reg. vs. McCann,* 28 *U. C. Q. B.,* 514; *Reg. vs. Williams,* 1 *Den. C. C.,* 39; *United States vs. Henning,* 4 *Cranch C. C.,* 608; *State vs. Custer,* 65 *N. C.,* 339, 343.

The most that can be said of a mere solicitation to commit an offence is, that it is evidence of an *intent* to commit it, which alone is not indictable. *Smith vs. Commonwealth,* 54 *Penn. St.,* 212; *Regina vs. Martin,* 9 *C. & P.,* 215.

But granting, for the sake of argument, that a mere solicitation, without an overt act, is an indictable attempt, yet, if the thing attempted, when, or if, *consummated,* is not indictable, there is no legal offence.

The second count charges that the traverser did advise one Rachel A. Taylor, then and there being a pregnant woman, to take and swallow certain medicines, &c., for the purpose of causing the miscarriage and abortion of her, the said Rachel, &c.

The offence of abortion, at common law, consisted in the attempt to destroy the life of an unborn child; "which life (says *Blackstone,* 1 *Com.,* 129,) begins, in contemplation of law, as soon as the infant is able to stir in the mother's womb." It was necessary, therefore, to allege in the indictment that the woman was "quick with child." To allege that she is "pregnant" or "pregnant with child" is not sufficient to make out the offence at common law.

1 *Arch. Cr. Pl. and Pr., pages* 951 *and* 952 ; 3 *Coke's Inst.,* 50 ; *Bracton & Fleta,* 121 ; 1 *Hawk. Pleas of the Crown, ch.* 31, sec. 61 ; 1 *Gabbett's Cr. Law,* 519 ; *Reg. vs. Hewitt,* 4 *Fost. & Fin. C. C.,* 1101 ; *Rex vs. Scudder,* 3 *Carr. & P.,* 605 ; *Commonwealth vs. Bangs,* 9 *Mass.,* 387 ; *Commonwealth vs. Parker,* 9 *Metcf.,* 263 ; *Hall vs. Hancock,* 15 *Pick.,* 256 ; *Mitchell vs. Commonwealth,* 78 *Ky.,* 204, 210 ; *State vs. Cooper,* 2 *Zab.,* (*N. J.,*) 57 ; *State vs. Howard,* 32 *Vt.,* 380 ; *Evans vs. People,* 49 *N. Y.,* 86 ; *State vs. Emerick,* 13 *Mo. App.,* 493 ; *Hatfield vs. Gano,* 15 *Iowa,* 177, 179.

This distinction is recognized in the Abortion Act of this State by defining pregnancy with child to include "any period during pregnancy." Act of 1868, ch. 179, Rev. Code, Art. 72, sec. 16.

It cannot be contended by the State that the indictment charges the traverser with an attempt to commit the offences provided by the Abortion Act, (Act of 1868, ch. 179,) because mere *advice* to take drugs or medicines, not shown to be effective to produce miscarriage or abortion, cannot be said "to be using or causing to be used, knowingly, means for the purpose of causing miscarriage or abortion."

A solicitation is not a "means" within the meaning of this statute. *McDade vs. People,* 29 *Mich.,* 50.

Moreover, when a statute contains an exception so incorporated with its enacting clause that the one cannot be read without the other, the indictment must negative the exception. *Non constat* that the traverser was not a "regular practitioner of medicine" under the proviso in the statute, and protected from this prosecution. Or as said by Judge DORSEY, (in *Price vs. State,* 12 *G. & J.,* 261,) "under the exception he might be innocent, although every allegation against him be fully proven." *State vs. Nutwell,* 1 *Gill,* 56 ; *Gans Dig. Crim. Law,* 83 *and* 84 ; *Hays vs. State,* 40 *Md.,* 646 ; 1 *Whar. Cr. Law,* sec. 597 ; *State vs. Stokes,* 54 *Vt.,* 179 ; *State vs. Meek,* 70 *Mo.,* 355 ;

*Bassett vs. State*, 41 *Ind.*, 246 ; *Beasley vs. People*, 89 *Ill.*, 571; *Willey vs. State*, 52 *Ind.*, 246.

A verdict, in a criminal case, when there has been neither arraignment nor plea, is a nullity, and no valid judgment can be rendered thereon. Nor will the proceeding be rendered good by the fact that the defendant went to trial voluntarily and without objection, knowing there was no plea. This is an error which is not waived by the trial or cured by the verdict. It is the duty of the prosecutor to see that proper issues be made up before proceeding to trial. 1 *Bishop Cr. Pr., sec.* 733 ; 1 *Wharton Cr. Law*, (2nd Ed.,) 530 ; *Anderson vs. State*, 3 *Pin.*, (*Wis.*,) 367 ; *Douglass vs. State*, 3 *Wis.*, 820 ; *People vs. Corbett*, 28 *Cal.*, 328 ; *Alesworth vs. People*, 65 *Ill.*, 301.

The Constitution of the State of Maryland, Article 15, section 5, declares that in the trial of all criminal cases, the jury shall be the judges of the law and the facts, and the Code, Article 30, section 91, provides that any person, presented or indicted, &c., may traverse the same before the Court, who shall thereupon try the law and the facts ; and Mr. Mayer referring to this section of the Code, (*Mayer's Dig.*, *page* 419,) says "it is a power conferred on the Courts for the benefit of the accused, to be exercised only at his election." It would appear therefore that this is a *personal* privilege, to be exercised by the defendant, and that the record should disclose some act on his part, *e. g.*, waiver of jury trial, election to be tried before the Court, without a jury, or traverse before the Court, before the Court is authorized, or has jurisdiction to try and convict him.

The docket entry "case tried before the Court" is ambiguous, and does not gratify the provision of the statute.

Where the consent is to a trial by the Court, and a statute authorizes such trial, the proceeding is valid ; but without such authorization it is invalid from want of juris-

diction in the tribunal. 1 *Bish. Cr. Pr., secs.* 893 *and* 898 ; *Proffat on Jury Trial, sec.* 113 ; *Hill vs. People,* 16 *Mich.,* 357 ; *Commonwealth vs. Andrews,* 3 *Mass.,* 133.

This Court, however, has decided in civil cases under Art. 4, sec. 8, of the Constitution, and Act of 1874, ch. 364, the provisions of which are substantially the same as sec. 91 of Art. 30 of the Code, that it must appear from the record that there was a consent or agreement by the parties to submit the cause to the Court for determination without a jury. *Desche vs. Gies,* 56 *Md.,* 137.

The overruling of the demurrer was not a final judgment against the defendant on the merits of the case.

At common law, in misdemeanors, the judgment upon demurrer is final, and not merely that the defendant shall answer over.

In the United States, the general practice has been, in such cases, where there is on the face of the pleading no admission of criminality on the part of the defendant to give judgment, *quod respondeat ouster,* and the English distinction does not seem to be recognized. 1 *Arch. Cr. Pr. & Pl.,* 8th *Ed.,* (1877,) (*Pomeroy's Notes,*) *p.* 355 ; *Commonwealth vs. Goddard,* 13 *Mass.,* 456, 460 ; *Commonwealth vs. Foster,* 8 *Watts & Serg.,* 77 ; *Commonwealth vs. Barge,* 3 *Pa. St.,* 262 ; 1 *Bishop Cr. Pr., secs.* 781-786 ; *Thomas vs. State,* 6 *Mo.,* 457.

The attempt to commit abortion by *solicitation* was necessarily involved in the first count. As the defendant did not *administer* the drugs, the only way the attempt could have been consummated, was by the act of the girl, taking the drugs under the defendant's advice, express or implied, by his delivery to her of the medicines for the purpose. The verdict therefore should have been a general one upon both counts of the indictment. The verdict of not guilty on the first count necessarily acquitted the defendant of the offence alleged in the second count.

*Manly vs. State,* 7 *Md.,* 151; *State vs. McNally,* 55 *Md.,* 563.

*Charles B. Roberts, Attorney-General,* for the State.

The statute does not seek to punish primarily the offence of producing the abortion or miscarriage ; it is the attempt to produce this result, which is indictable under the law. The mere intention to cause the miscarriage of a pregnant woman is no offence, but as soon as that intent becomes manifest by word or act, which sets in motion the forces, by which, if all things work according to his intention and desire, the miscarriage of the pregnant woman will be effected, the offence is complete, and the offender is liable to indictment.

An act toward an indictable wrong, if prompted by the intent to do it, partakes of the culpability of its doing. And if its not being done was caused by some intervening obstacle, while the evil purpose remains unchanged, the person attempting it is as morally responsible as if he had succeeded in what he meant. 1 *Bishop Cr. Law, sec.* 772, (*a.*)

Under the statute, any person who shall knowingly use, or cause to be used, any means whatever for the purpose expressed, is liable to indictment and punishment. The pregnant woman, who uses any means whatever, whether instruments, drugs, poisons or other thing, for the purpose of abortion, is guilty of the offence. The person who caused her to use the means, of whatever kind, for the purpose aforesaid, is equally guilty, no matter how he prevailed upon the woman, whether it was by violence, forcing the drugs down her throat and compelling her to swallow them, or by making an assault upon her with instruments, or by persuading and soliciting her willingly to employ the means suggested. See 1 *Bish. Cr. Law, sec.* 767 ; *Reg. vs. Ransford,* 13 *Cox C. C.,* 9.

One whose attempt consists in unsuccessfully soliciting another to commit the proposed crime, does not morally

differ from him, who, in felony, solicits successfully, and is termed an accessory before the fact. And his legal posi-- tion is the same, except that the public has suffered less, so it punishes him less severely. In both cases what was done was by operating on the will of another, in the one successfully, in the other not. The principle is identical in both. . 1 *Bish. Cr. Law, sec.* 772, (*a.*)

Whenever the solicitation involves the use of means to effect the illegal end, such solicitation is substantively in- .dictable. In this case the solicitation involved the em- ployment of certain means, to wit, the means set out in the second count of the indictment, "a large quantity of a certain substance, medicine and noxious and poisonous drugs and preparations." 1 *Bish. Cr. Law,* 767, *et seq.; Reg. vs. Clayton,* 1 *Car. & Kirwan,* 128 ; 1 *Whar. Crim. Law,* 179.

It makes no difference whether or no the substance, drugs or medicine, employed, were effective for the pur- pose of producing abortion ; the statute provides against the using, or causing to be used, any means whatever for that purpose. The question therefore is as to the inten- tion of the party administering it, and not as to the nox- ious or innoxious character of the article itself. *Rex vs. Coe,* 6 *Carr. & P.,* 403 ; *State vs. Fitzgerald,* 49 *Iowa,* 260 ; *Slattery vs. People,* 76 *Ill.,* 217 ; *Rex vs. Phillips,* 3 *Campbell,* 73, 76 ; 1 *Bishop Crim. Law, sec.* 768, *c ;* 2 *Bishop Cr. Prac., sec.* 74 ; *Rex vs. Higgins,* 2 *East,* 5.

· It was urged by the appellant to sustain his demurrer to the indictment, that there was no such offence at com- mon law as abortion, and per consequence no redress for the attempt thereof ; but the contrary is abundantly shown by numerous authorities. *State vs. Slagle,* 82 *N. C.,* 654 ; *Bish. on Stat. Cr.,* (*2nd Ed.,*) *secs.* 740, 744, 751, 752, 754 ; *Roscoe's Crim. Ev.,* (*7th Ed.,*) *p.* 267 ; *Waterman's U. S. Dig., p.* 3, (1877); 1 *Whr. Cr. Law, sec.* 592 ; 1 *Russell on Crimes,* 899.

The attempt to commit abortion is an indictable offence at common law, and upon which our statute seems to have been predicated. 2 *Bouvier Law Dic.*, 242 ; 1 *Whr. Crim. Prac.*, 204; *State vs. Parker*, 9 *Met.*, 265 ; 6 *Pa. Law Journal*, 31.

BRYAN, J., delivered the opinion of the Court..

The indictment against the traverser contained two counts. In the first it was charged that he attempted to commit an abortion on the body of one Rachel A. Taylor, who was a pregnant woman, and that the overt act towards the commission of the offence was the supplying and delivering to the said Rachel, a large quantity of noxious and poisonous drugs and preparations for the purpose of causing the said abortion. The second count charged that the traverser did advise, solicit and incite the pregnant woman to take and swallow a large quantity of noxious and poisonous drugs and preparations for the purpose of causing an abortion. The traverser demurred to both counts of the indictment. The demurrers being overruled, he was put on his trial and acquitted on the first count, but convicted on the second. He was sentenced to imprisonment for two years in the House of Correction.

The traverser was not regarded by the Court below as having incurred the penalties prescribed by the statute of 1868. These are imprisonment in the penitentiary for a term not less than three years, or fine ; or by both fine and such imprisonment. This statute made great changes in the pre-existing law. It made it highly penal to give notice by advertisement, printing or publication of any place where any means could be procured for the purpose of producing abortion, or where any advice, direction, information or knowledge could be obtained for the purpose of causing the miscarriage or abortion of any pregnant woman, at any period of her pregnancy ; and it also prescribed punishment for every person who should sell, or

cause to be sold, any medicine for this purpose, or who should knowingly use, or cause to be used, any means whatsoever for the same. It excepted from its provisions certain operations by regular medical practitioners. By the ancient common law, according to Lord COKE, "if a woman be quick with child, and by a potion or otherwise killeth it in her womb, or if a man beat her, whereby the child dieth in her body, and she is delivered of a dead child, this is a great misprision, and no murder." But as the life of an infant was not supposed to begin until it stirred in the mother's womb, it was not regarded as a criminal offence to commit an abortion in the early stages of pregnancy. A considerable change in the law has taken place in many jurisdictions by the silent and steady progress of judicial opinion ; and it has been frequently held by Courts of high character that abortion is a crime at common law without regard to the stage of gestation. In this State, however, the change has been effected by the action of the Legislature, and not by the decisions of the Courts. The offences to be punished are defined with great minuteness and particularity, and the scope of criminality in matters of this description is greatly enlarged. But the acts charged upon the traverser in the second count are not comprehended in the terms of the statute. The charge is that the traverser solicited a pregnant woman to take certain drugs for the purpose of causing an abortion. It is not stated that she took the drugs. The act is germane to those prohibited by the statute. It is an effort by solicitation to cause means to be used for a guilty purpose. It may be urged that a solicitation is an attempt, and that an attempt to commit a misdemeanor is a misdemeanor. Pursuing the same train of inference and reasoning, we may go a step further, and maintain that as the solicitation is a misdemeanor, an attempt at solicitation would, by the same rule, be also a misdemeanor. This process might be indefinitely extended, so as to reach

persons very remotely separated from the act which the statute intended to punish. Certainly it would be a great public calamity to invent crimes by subtle, ingenious and astute deduction. In all free countries the criminal law ought to be plain, perspicuous and easily apprehended by the common intelligence of the community. It is the essence of cruelty and injustice to punish men for acts which can be construed to be crimes only by the application of artificial principles according to a mode of disquisition unknown in the ordinary business and pursuits of life. The Legislature, with ample power over the whole subject, determined what offences should be punished. If it had desired that other actions of a cognate character should become penal, it would have so enacted. It is the duty of the Courts to interpret and administer the legislative will; but in cases of criminal cognizance they must resolutely determine never to exceed it. It has frequently been stated that an attempt to commit a misdemeanor, is, by the common law, a misdemeanor. There are undoubtedly many instances in which this is true. But it cannot be maintained as a universal principle. The law has declared that an attempt to commit a felony, or a persuasion of another person to commit a felony, is a misdemeanor. And it has declared many actions to be misdemeanors where the purpose of the offender was not consummated, although if consummated, it would have been only an offence of this grade. Acts of this description are well defined and their character well understood. There must be an unlawful purpose, and an act committed which would carry it into immediate execution, unless it were prevented by some counteracting force or circumstance which intervenes at the time. We may see an illustration of this doctrine in cases of assault and battery. A battery is defined to be the unlawful beating of another; and an assault is an attempt to beat another without touching him. But it is held that a purpose to commit violence on

Lamb *vs.* State.

the person of another, if not accompanied by an effort to carry it into immediate execution, falls short of an assault; and that where an unequivocal purpose of violence is accompanied by any act, which, if not stopped, or diverted, will be followed by personal injury, the attempt is complete. *State vs. Davis,* 1 *Iredell, (N. C.) Repts.,* 125. The law would not be a practical system if it did not define with precision the nature and circumstances of the attempts which are criminal, and determine what acts are necessary to make the attempt a substantive offence. In our judgment it has done so, and not left us to grope after results under the guidance of vague general expressions.

The act described in the second count is extremely immoral and very offensive to the sensibilities of all virtuous people, but we have no power to make a law for its punishment. The demurrer to the second count ought to have been sustained, and as the traverser was acquitted on the first count, he ought to have been discharged.

*Judgment reversed.*

(Decided 23d June, 1887.)


ALVEY, C. J., filed the following dissenting opinion, which was concurred in by Judge IRVING:

I am so unfortunate in this case as to be unable to agree with the majority of the Court in the opinion that has been filed, reversing the judgment of the Court below. According to my opinion, that judgment ought to be affirmed.

The indictment contains two counts. The first charged the defendant with an attempt to commit an abortion upon Rachel A. Taylor, then and there being pregnant with child, and to accomplish such object, used and employed certain means described.

The second count charged that the defendant did " unlawfully and wickedly advise, solicit and incite Rachel A.

Taylor, then and there being a pregnant woman, to take and swallow a large quantity of a certain substance, medicine, and noxious and poisonous drugs and preparations, to the jurors unknown, for the purpose of causing the miscarriage and abortion of her, the said Rachel A. Taylor, then and there pregnant with child as aforesaid, and thereby to commit the crime of abortion."

To each of these counts a demurrer was entered, and which was overruled by the Court. The defendant then pleaded to the indictment, and upon trial he was acquitted of the charge in the first count, but was convicted on the second count, and was duly sentenced. The case is here upon assignment of error, in overruling the demurrer to the second count of the indictment; and the general question is, whether the facts charged in that count, and admitted by the demurrer, constitute an offence punishable by law.

By the statute law of this State, (Act 1868, ch. 179, sec. 2,) it is made unlawful and a criminal offence for any one, by any sort of publication, to indicate the means, or the person or place from whom or where the means may be procured, for producing abortion, or to give any kind of direction "from whom any advice, direction, information or knowledge may be obtained for the purpose of causing the miscarriage or abortion of any woman pregnant with child, *at any period of her pregnancy,"* or knowingly to sell, or cause to be sold, any medicine, or knowingly to use, or *cause to be used, any means whatsoever for that purpose,* that is, to cause miscarriage or abortion as aforesaid, and any person so offending is made liable to punishment by imprisonment in the penitentiary for not less than three years, or by a fine of not less than five hundred dollars, nor more than one thousand dollars, or by both, in the discretion of the Court.

It is very clear, if the defendant had administered the noxious drug for the purpose of producing abortion, or if

Lamb *vs.* State.

he had *caused* the girl to take the drug for that purpose, he would have been guilty of the statutory misdemeanor ; and that, too, wholly irrespective of the effect produced upon the woman. He would have *used*, or *caused* to be used, means for the *purpose* of producing abortion, and whether such means were sufficient to produce the desired effect or not, the crime would have been fully embraced within the terms of the statute. But the defendant is only charged with unlawfully and wickedly advising, soliciting and inciting the woman to take and swallow a large quantity of noxious drugs, for the purpose of producing abortion ; and the question is, whether this, in view of the statutory misdemeanor, is a crime at the common law, as for an attempt to commit a misdemeanor ? And in my opinion it clearly is.

Even at common law, an attempt to produce an abortion is held to be a misdemeanor, and it is not necessary, as it seems to have been at one time supposed, to aver in the indictment that the woman was *quick* with child ; but to aver that she was pregnant with child is quite sufficient. 3 *Chitt. Cr. Law,* 798 ; 1 *Russ. on Cr.,* 553, (*2nd Ed.*); 2 *Whart. Cr. Law, secs.* 1220–1223, (*7th Ed.*); *Mills vs. Comm.,* 13 *Pa.,* 631, 633. As was said by the Supreme Court of Pennsylvania, in the case just referred to, "It is a flagrant crime, at common law, to attempt to procure the miscarriage or abortion of a woman, because it interferes with and violates the mysteries of nature, in that process by which the human race is propagated and continued. It is a crime against nature, which obstructs the fountain of life, and therefore it is punished."

Here the statute has declared, that knowingly to use, or cause to be used, any means whatsoever for the purpose of producing a miscarriage or abortion, at any stage of the woman's pregnancy, shall constitute a substantive offence, which is a misdemeanor ; and the established general principle is, that an attempt to commit a misdemeanor is a

misdemeanor itself. *Reg. vs. Ransford,* 13 *Cox C. C.,* 9. And so an attempt to commit a misdemeanor created by statute is a misdemeanor. *Rex vs. Butler,* 6 *C. & P.,* 368. In the case of *Rex vs. Roderick,* 7 *C. & P.,* 795, where the traverser was indicted for attempting to know a child under twelve years of age, PARKE, B., said : "If this offence is made a misdemeanor by statute, it is made so for all purposes. There are many cases in which an attempt to commit a misdemeanor has been held to be a misdemeanor ; and an attempt to commit a misdemeanor is a misdemeanor, whether the offence is created by statute, or was an offence at common law." This is clearly the general principle ; but it is not of universal application. It does not apply in that class of cases made criminal merely to prevent the evasion of the revenue laws, or to secure the observance of mere police regulation, and the like, where the acts made criminal are not *mala in se,* but simply *mala quia prohibita.*

In a text book of high authority it is laid down as among the established principles of the criminal law, that the *attempt to commit a crime,* though the crime be but a *misdemeanor,* is itself a misdemeanor. But that to constitute such an attempt, there must be an intent that the crime should be committed by some one, and an act done pursuant to that intent. And as instances or examples of the application of the principle, the author gives those found in the books where indictments have been sustained against parties for advising and inciting another to steal ; for persuading or soliciting a public officer to receive a bribe ; and for soliciting another to commit adultery. 3 *Greenl. Ev., sec.* 2. And in 1 *Bishop on Criminal Law, sec.* 767, it is laid down as established doctrine, that "soliciting another to commit a crime is a common form of attempt, the act which is a necessary ingredient in every offence, consisting in the solicitation. A solicitation does not stand so near the substantive offence intended as some

other forms of attempt. It appears, properly viewed, to be the first of a series of steps toward the execution." And it seems to be settled that an indictment is sufficient which simply charges that the defendant, at the time and place mentioned, unlawfully and wickedly did solicit and incite the person named to commit the substantive offence, without any further specification of overt acts. 1 *Bish. Cr. Law, sec.* 768 *c.*

There are many precedents and express decisions that sustain the principles just stated from the text books. In the case of *Rex vs. Vaughan,* 4 *Burr.,* 2494, the charge was for an attempt to corrupt the Duke of Grafton, a member of the Privy Council, by solicitation to induce him for a bribe to procure an office for the applicant. Lord MANSFIELD, with the concurrence of the other Judges, said that he was clear that the offence charged was a misdemeanor, and punishable as such. And in the course of his judgment his Lordship said : "If a party offers a bribe to a Judge, meaning to corrupt him in a case depending before him; and the Judge taketh it not; yet this is an offence punishable by law, in the party that offers it. 3 *Inst.,* 147. So, also, a promise of money to a corporator to vote for a mayor of a corporation ; as in *Rex vs. Plympton,* 2 *Ld. Raym.,* 1377. And so also must be an offer to bribe a Privy Counsellor, to advise the King." And in the case of *Rex vs. Phillips,* 6 *East,* 464, it was held, upon full argument and examination of authorities, that an endeavor to provoke or incite another to commit the misdemeanor of sending a challenge to fight a duel is itself a misdemeanor, and therefore indictable at common law. And so to attempt to suborn one to commit perjury, or to solicit and persuade a witness to absent himself from a public prosecution when summoned as a witness, or to solicit a party to commit adultery, or any other misdemeanor, of an evil and vicious nature, are indictable offences, and punishable at the common law. *Rex vs.*

*Lawly, Fitzg.,* 263 ; *State vs. Keyes,* 8 *Vt.,* 57 ; *State vs. Carpenter,* 20 *Vt ,* 9 ; *State vs. Avery,* 7 *Conn.,* 267 ; *Comm. vs. Harrington,* 3 *Pick.,* 26.

The leading case upon the subject is that of *Rex vs. Higgins,* 2 *East,* 5. In that case the traverser was indicted for soliciting and inciting a servant to steal his master's goods ; and it was held, upon full consideration, that it was a punishable misdemeanor for any one to solicit another to steal, and this, though it be not charged in the indictment that the party solicited stole the goods, or that any other act was done more than the simple acts of *soliciting and inciting* by the traverser. There, in answer to the argument, that a mere intent to commit evil was not indictable, without an act done, Lord Ch. Justice KENYON replied : "But is there not an act done, when it is charged that the defendant solicited another to commit a felony ? The solicitation is an act ; and the answer given at the bar is decisive, that it would be sufficient to constitute an overt act of high treason." Mr. Justice GROSE, after referring to the cases upon the subject, said : "All these cases prove, that inciting another to commit a misdemeanor is itself a misdemeanor ; *a fortiori,* therefore, it must be such to incite another to commit felony." And Mr. Justice LAWRENCE said : "The whole argument for the defendant turns upon a fallacy in assuming that no act is charged to have been done by him ; for a solicitation is an act. The offence does not rest in mere intention ; for in soliciting Dixon to commit the felony, the defendant did an act towards carrying his intention into execution. It is an endeavor or attempt to commit a crime." And the principle of that case was fully adopted and applied in the recent case of *Reg. vs. Ransford,* 13 *Cox C. C.,* 9, by the Court of Criminal Appeal in England ; and the attempted distinction made here, between the cases of felony and misdemeanor, was, in that case, utterly ignored, as being without foundation.

Lamb *vs.* State.

Here, taking the averments of the indictment to be true, as admitted by the demurrer, the defendant, by the solicitation and incitement as charged, did all that he could well do towards committing the substantive offence created by the statute ; for if the woman had yielded to his solicitation and taken the drugs for the purpose charged, the defendant would have been guilty of the offence denounced by the statute. But the fact that the woman did not yield to the solicitation and comply with the prescription of the defendant, by no means relieved the latter of the crime of attempting to commit the offence prescribed by the statute ; for all the cases agree in holding that an attempt to commit a crime is not without criminality because the object of the attempt was not accomplished. The attempt is treated as a distinctive offence.

It is also objected, that the indictment is defective because it contains no averment to negative the authority conferred by the *proviso* of the statute, contained in the second section thereof. But such negative averment, in a case like the present, is wholly unnecessary, according to the settled doctrine of this Court. If the traverser acted under the authority conferred by the proviso in the statute, he could show the fact as justification, by way of defence; and it was not incumbent upon the State to aver in the indictment, and show as matter of fact, that the traverser did not so act. *King vs. Stone,* 1 *East,* 644 ; *Bode vs. State,* 7 *Gill,* 330 ; *Rawlings vs. State,* 2 *Md.,* 211.

For the reasons I have stated, and upon the authorities to which I have referred, I am clearly of opinion that the judgment ought to be affirmed.

(Filed 23rd June, 1887.)