THE PEOPLE OF THE STATE OF NEW YORK, APPELLANT, *v.* CHARLES F. PECK AND ELBERT RODGERS, RESPONDENTS.

*Removal of papers from a public office — commissioner of statistics of labor — statistics deposited in his office are public papers — removal and destruction of.*

On demurrer to an indictment charging the willful and unlawful removal and destruction of answers, in writing, of persons connected with industrial establishments, to circulars of inquiry issued by the commissioner of statistics of labor of this State, constituting statistics required to be collected by him,

under the statutes prescribing his duties (chapter 356 of Laws of 1883, amended by chapter 205 of Laws of 1886), and received by him and deposited in the Bureau of Labor Statistics:

*Held*, that such statistics were public papers and documents deposited in a public office, and with a public officer by authority of law, and hence that the facts stated in the indictment constituted a crime under section 94 of the Penal Code. (PUTNAM, J., dissenting.)

APPEAL by the People of the State of New York from a judgment of the Court of Sessions of the County of Albany, entered in the office of the clerk of that county on the 14th day of November, 1892, sustaining the demurrer of the defendants to the indictment against them.

*James W. Eaton*, for the appellant.

*Edward J. Meegan*, for the respondents.

MAYHAM, P. J.:

The respondents were jointly indicted for the alleged crime of removing and destroying public documents.

The full text of the indictment is as follows:

"The grand jury of the county of Albany accuse Charles F. Peck and Elbert Rodgers of the crime of removing and destroying public documents committed as follows: The said Charles F. Peck, heretofore and at the time of the commission of the acts hereafter stated, was and now is the Commissioner of Statistics of Labor of the State of New York, a public officer and a public office duly created by an act of the legislature of the State of New York, and as such Commissioner it became and was his duty to collect, assort, systematize and present, in annual reports to the legislature, statistical details relating to all departments of labor in this State, and especially in relation to the commercial, industrial, social and sanitary conditions of workingmen and to the productive industries of this State; and that at all the times hereafter referred to it was the legal duty of every person, owner, operator, manager and lessee of every mine, factory, work-shop, warehouse, elevator, foundry, machine-shop and other manufacturing establishment in the State, and of every agent and employee of such owner, operator, manager and lessee of every such mine, factory, work-shop, warehouse, elevator, foundry, machine-

shop and other manufacturing establishment to furnish such commissioner, when requested by him, statistical and other information in their possession or under their control relative to the lawful duties of such Commissioner as above set forth, and to truthfully answer questions concerning such lawful duties of the said Commissioner sent to them by said commissioner by circular.

"That heretofore and in the year 1891, between the first day of January and the thirty-first day of December, in said year, and the year 1892, between the first day of January and the first day of September, in said year, the said defendant, Charles F. Peck, as Commissioner of Statistics of Labor of the State of New York, in pursuance of the duties devolved on him by law to collect, assort and systematize statistical details relating to all departments of labor in this State, and especially in relation to the commercial, industrial, social and sanitary condition of workingmen, and to the productive industries of the State, sent circulars to the owners, operators, managers and lessees of the mines, factories, work-shops, warehouses, elevators, foundries, machine-shops, and other manufacturing establishments of this State, which said circulars did then and there contain questions asking for statistical information relating to the lawful duties of such Commissioner, and relating to the details of all departments of labor in this State, and especially in relation to the commercial, industrial, social and sanitary condition of workingmen in this State, and to the productive industries of this State; and did, at the times aforesaid, receive answers to the questions contained in said circulars from the owners, operators, managers and lessees of the mines, factories, work-shops, warehouses, elevators, foundries, machine-shops, and other manufacturing establishments of this State, which said answers were contained in and written on the circulars sc sent out by the said Charles F. Peck, as Commissioner of Statistics of Labor of the State of New York; and which said answers, then and there being, were and are the statistical details relating to all departments of labor in the State of New York, and especially in relation to the commercial, industrial, social and sanitary condition of workingmen of the State of New York, and to the productive industries of the State of New York; and which said circulars, containing the questions aforesaid, and the answers aforesaid, were sent to and received by the said defendant,

Charles F. Peck, as such Commissioner of Statistics of Labor of the State of New York, by due authority of law, at his office in the New Capitol, in the city of Albany, and known as the Bureau of Labor Statistics of the State of New York, he, the said Charles F. Peck, being then and there a public officer of the State of New York, and received and filed and deposited by said Charles F. Peck in the office of the Bureau of Labor Statistics of the State of New York, at the headquarters thereof in the New Capitol, in the city of Albany, the said Bureau of Labor Statistics being, and was then and there, a public office of the State of New York, and being then and there received, filed and deposited by due authority of law, and being, and were then and there, public records, books, papers and documents of the State of New York.

"And the grand jury further say that the said Charles F. Peck and Elbert Rodgers, on the 11th day of September, 1892, at the city of Albany, in this county, feloniously, willfully and unlawfully, did remove, mutilate, conceal and destroy the public records, books, papers and documents, so as aforesaid filed and deposited by due authority of law in the office of the Bureau of Labor Statistics of the State of New York, in the new capitol, at the city of Albany, the same being then and there a public office of the State of New York, and the same being then and there filed and deposited by due authority of law with the Commissioner of Statistics of Labor of the State of New York, at his office in the New Capitol, in the city of Albany, he being then and there a public officer of the State of New York, and which said public records, books, papers and documents aforesaid did then and there relate to, and were the official statistical details relating to all departments of labor in the State of New York, and especially in relation to the commercial, industrial, social and sanitary condition of the workingmen of the State of New York, and to the productive industries of the State of New York for the years 1890 and 1891, and were and are the official and public records, books, papers and documents of the Bureau of Labor Statistics of the State of New York, and the official and public records, books, papers and documents of the People of the State of New York.

"And the grand jury aforesaid, further say that the public records, books, papers and documents aforesaid have been and are withheld by the said Charles F. Peck and Elbert Rodgers, and have been and

were removed and mutilated by the said Charles F. Peck and Elbert Rodgers, and have been destroyed by the said Charles F. Peck and Elbert Rodgers so that the grand jury are unable to give a better description of them than as above set forth, and so that the grand jury are unable to set them out in detail, and are unable to set them out in words and figures.

"And so the grand jury aforesaid charge and accuse the said Charles F. Peck and the said Elbert Rodgers with feloniously, willfully and unlawfully removing, mutilating, concealing and destroying public records, books, papers and documents, contrary to the statute in such case made and provided.

"JAMES W. EATON,

*"District Attorney of the County of Albany."*

To this indictment each of the defendants demurred, as follows:

" The defendant, Charles F. Peck, demurs to the indictment presented herein against him and assigns as the grounds thereof, which appear on the face thereof, to wit:

"*First.* That said indictment does not conform substantially to section 276 of the Code of Criminal Procedure.

"*Second.* That more than one crime is charged in the indictment within the meaning of section 278 of the Code of Criminal Procedure.

" *Third.* That the facts stated in said indictment do not constitute a crime.

"*Fourth.* That the said indictment contains matters, which, if true, constitute a legal bar to the prosecution.

"CHARLES F. PECK,

"*Defendant.*"

The principal point raised by these demurrers and urged on this appeal is as to whether or not the facts charged and alleged in the indictment constitute a crime, under section 94 of the Penal Code. That section provides as follows:

" A person who willfully and unlawfully removes, mutilates, destroys, conceals or obliterates a record, map, book, paper, document or other thing filed or deposited in a public office or with any public officer by authority of law is punishable by imprisonment for

not more than five years or by a fine of not more than five hundred dollars or by both."

The indictment in this case shows that Charles F. Peck was a public officer charged with the duty of gathering statistics of a public nature and for a public purpose; that such statistical information was to be gathered in part on his application from individuals and corporations on his request made to such individuals and corporations who were by the law charged with the duty of answering truly such applications and requests of delivering the answers so made to him as such public officer; that in pursuance of such duty, as such officer, he did make application and send circulars to the owners, operators, managers and lessees of the persons and corporations from whom he desired and whose duty it was to furnish such statistical information, which circulars contained questions asking for information, and that he received answers thereto, which answers were contained in and written on such circulars and which answers were and are statistical details relating to the commercial, social and sanitary conditions and the productive industries of the State and that such answers were sent to and received by the defendant, Charles F. Peck, as such commissioner and public officer, in the office of the Bureau of Labor Statistics of the State of New York and filed and deposited by him in that office, at the headquarters thereof in the new capitol, in the city of Albany.

The indictment further charges that the defendants Charles F. Peck and Elbert Rodgers, on the 11th of September, 1892, at the city of Albany in the county of Albany, feloniously, willfully and unlawfully did remove or mutilate the public records, books, papers and documents so filed and deposited in the office of the Bureau of Labor Statistics, the same being then and there deposited with such commissioner by authority of law.

The facts above recited are material, issuable facts, which are admitted by the demurrers; the legal conclusions sought to be drawn from these facts, which are incorporated in the indictment, are not issuable facts, and not, therefore, admitted by the demurrer.

The defendants, therefore, by their demurrers to this indictment admit all the facts, charged as facts, and say by their demurrers that assuming their truth they constitute no legal crime.

We start then, in the investigation of this case, with the following admitted facts:

*First.* That defendant Peck was, at the times charged in the indictment, a public officer charged with the duty of gathering statistical information for public purposes.

*Second.* That he had power and authority to compel the production to him of information in writing by persons and corporations to be used by him as a public officer.

*Third.* That he, as such public officer, issued to persons and corporations circulars containing questions relating to the statistical information which he was required as a public officer to collect.

*Fourth.* That such circulars were answered in writing by the persons and corporations to whom they were addressed, and such answers, in writing, were received by him at his office or headquarters in the new capitol of the State of New York, in the city of Albany, and were in his possession as such officer in his said office or headquarters.

*Fifth.* That the defendant Peck and the defendant Rodgers willfully and intentionally removed, mutilated and destroyed such circulars and answers.

Upon these conceded facts the learned counsel for the defendants insists that they do not constitute a crime.

We fully agree with the learned counsel for the defendants upon the proposition which he has so ably established by argument and authority, that a criminal charge in an indictment, based upon facts, which do not constitute a crime, is not admitted by the demurrer and a citation of authorities here upon that subject is unnecessary.

But it is urged that the papers set out or referred to in the indictment as containing statistical information which are alleged to have been destroyed are not such books, documents, papers or things filed or deposited in a public office, or with a public officer by authority of law, as are contemplated by section 94 of the Penal Code, and upon this point it is urged that the statistics required to be gathered by the Commissioner of Labor Statistics do not come within any of the papers or documents, the removal or destruction of which constitute a crime.

The office of Commissioner of Statistics of Labor was created by chapter 356 of the Laws of 1883, and by that act and chapter 205 of the Laws of 1886 the authority to gather and tabulate statistics was conferred upon that officer.

By section 3 of that act, as amended by chapter 205 of the Laws of 1886, the commissioner was authorized to take testimony, send for persons and papers, examine witnesses on oath, to take depositions; and any of the persons or corporations so authorized to be examined, who shall refuse admission to said commissioner to his or its place of business for the purpose of inspection, or who shall, when required by him, willfully neglect or refuse to furnish to him any statistical or other information relative to his lawful duties, which may be in their possession or under their control, or who shall willfully neglect or refuse for thirty days to answer any question, or questions by circular, or upon personal application, or who shall knowingly answer any such question untruthfully, * * * shall, for every such willful neglect or refusal, be deemed guilty of a misdemeanor.

The power given by this section to investigate the truth of the answer furnished to any circular issued by the commissioner, and to punish any false answer as a misdemeanor, would seem to imply a duty on the part of the commissioner to preserve the answers and statistics thus furnished, and the ample power conferred upon the commissioner to cause and compel such answers to be given and furnished to him as a public officer, would seem to invest such documents with the attributes of "paper, document, or other thing, filed or deposited in a public office or with any public officer by authority of law," within the provisions of section 94 of the Penal Code.

We are referred by the learned counsel for the defendants to the technical definition of the word "statistics," as given by lexicographers; but whatever that definition literally may be, it seems quite clear that the legislature, for the purposes of this act, has given documentary statistical information the character of a "paper deposited with a public officer by authority of law," and that this indictment is sufficiently specific to bring these papers, so far as their description is concerned, within the rules requiring definiteness of description.

The indictment both charges the crime and the act, so far as these papers are concerned, constituting it. ( *Wood* v. *People*, 53 N. Y., 513; *People* v. *Dumar*, 106 id., 502.)

Again, it is insisted that as the law creating the office of Commissioner of Statistics of Labor provided no specific place for the

custody of these papers and made no provision requiring the commissioner to file or deposit any papers, records or documents that may come to him, he could destroy them without violating any provision of law, and that their destruction or mutilation was not a criminal offense.

It must be conceded that there is a great force in these suggestions, and, unless the same is met and overcome by some allegation of fact in the indictment or by some other public or general statute, then the contention of the defendant must prevail.

But there is a general provision of statute under which it is claimed by the learned district attorney these documents, which are official in their nature, must be retained or preserved, even though there is no provision for filing or depositing them in any public office by the Commissioner.

If the papers described in the indictment are, as we have determined, papers officially in the possession of the Commissioner and pertain to his office, then there would rest upon him, at least, an implied obligation to retain and deliver them to his successor in office under the provisions of the Revised Statutes, although there was no express provision of law for filing or depositing them in his office.

By article 5 of chapter 5, title 6, part 1 of the Revised Statute, page 376 of volume 1 (Banks & Bros., 7th ed.), it is provided as follows: Section 50. "Whenever any person shall be removed from office or the term for which he shall have been elected or appointed shall expire he shall, on demand, deliver over to his successor all the books and papers in his custody, as such officer, or in any way appertaining to his office. Every person violating this provision shall be guilty of a misdemeanor."

Sections 51, 52, 53 provide for a summary manner of recovery of the same by the successor in office. This provision of the Revised Statute appears to have been repealed by article 3 of chapter 681 of the Laws of 1892, and its penal and summary provisions, are, therefore, no longer enforcible, but, I think, it can hardly be maintained that the duty of an officer to deliver the books and effects of his office to his successor has been by that repeal entirely removed.

The reason for the application of such a rule to cases of this character becomes apparent when it is considered that the Commissioner

may, at great expense to the State, collect statistical information which may not be tabulated or embraced in his report before his removal from, or the expiration of his term of, office, and by its destruction or mutilation, the information gathered, at the expense of the State, by its agent or officer, and thus its property would be lost to the State if the papers in his custody could be destroyed by him ; or, to test the question of the right of the Commissioner to treat this information as his private property, which he might destroy at pleasure, let it be assumed that this statistical information had been obtained by a Commissioner, and while in his possession, and before tabulated or digested and reported to the legislature, the Commissioner should be removed from office, could it be reasonably contended that he could withhold these statistics from his successor without subjecting himself to the provisions of section 50 of the statute above referred to, even though there was no provision of law requiring him to file the same or deposit it in a public office. But whether this be so or not these papers were deposited with a public officer within section 94 of the Penal Code.

Taking this indictment as a whole we think it alleges and charges that the defendant Peck was a public officer ; that the papers referred to are official papers ; that they were deposited with a public officer, and they were willfully and unlawfully mutilated, obliterated and destroyed by the defendants, and that enough is alleged to bring the case within the provisions of section 94 of the Penal Code.

The order and judgment of the Court of Sessions should be reversed and judgment given for the people on the demurrers, with leave to the defendants to withdraw the demurrers and plead to the merits at the next Court of Sessions of Albany county after the service of notice of this decision.

HERRICK, J. :

"A person who willfully and unlawfully removes, mutilates, destroys, conceals or obliterates a record, map, book, paper, document or other thing filed or deposited in a public office, or with any public officer by authority of law, is punishable," etc.    (Penal Code, § 94.)

The indictment in this case charges the destruction of certain papers or documents by the defendants. Were they filed or deposited in a public office, or with any public officer, and, if so, were they so filed or deposited by authority of law? For all these things are necessary to bring the case within the section quoted.

That the things alleged to have been mutilated and destroyed were papers or documents is not questioned. That they were mutilated or destroyed is a question of fact admitted by the demurrer. That the defendant Peck is the "Commissioner of Statistics of Labor" is also a question of fact admitted by the demurrer. That the "Commissioner of Statistics of Labor" is a public officer, I think, will not be questioned; so that the only questions, it seems to me, left for consideration are, were the papers or documents filed or deposited in a public office, or with any public officer, and, if so, were they filed or deposited by authority of law.

In construing a statute, meaning should be given to every word; and a proper respect for the legislature, if no other reason, should lead us to suppose that it has chosen the words of a statute carefully; that none have been used needlessly, and that it knew the meaning of the words used; especially is this true of words used in Penal Statutes.

The statute reads "*filed or deposited*;" the words "filed" and ' deposited " are evidently not used as synonymous or as the equivalents of each other, but as words having a different signification. A paper is said to be filed when it is delivered to the proper officer and by him received to be kept on file. (Bouvier Law Dict.) And the derivation and meaning of the word, as defined in the dictionaries, carries with it the idea of permanent preservation; becoming part of the permanent records of the public office where it is filed. (Rapalje & Lawrence Law Dict.; Century Dict.)

Deposit does not carry with it the same meaning; it may or may not mean a permanent disposition of the thing placed or deposited. (See Worcester's Dict.; Century Dict.) It may mean a mere temporary disposition or placing of the thing.

And the words of the statute being coupled together, or rather disjoined by the conjunction " or," the same meaning is not to be given to each, but that meaning or signification which distinguishes it from the other, and thus each word given full force and effect.

It would follow from this, that the section of the Penal Code cited includes papers and documents placed in a public office or with a public officer, not only for permanent care and preservation, but also those placed there for the time being, for temporary use or custody.

The indictment alleges that the papers and documents in question were circulars sent by the defendant Peck, as Commissioner of Statistics of Labor, to different persons in the State asking certain questions of them, to which they answered, their answers being contained and written upon the circulars sent out by him; that he received them and deposited and filed them in the office of the Bureau of Labor Statistics at the headquarters thereof in the New Capitol in the city of Albany.

They were given to and received by him as a public officer; he issued the circulars in his official capacity; they were returned with the answers to him as a public official.

The act creating the office of "Commissioner of Statistics of Labor" is entitled "An act to provide for the establishment of a Bureau of Labor Statistics," it provides for a commissioner, a clerk and headquarters, that is a local official habitation or office for the transaction of its business in the New Capitol at Albany; the act could not very well go any further and designate the room or rooms, the trustees of the capitol building do that.

The headquarters thus provided for would, when established, be very properly and appropriately described as the office of the Bureau of Labor Statistics, and it would be a public office, and a paper or document filed or deposited there it seems to me would be filed or deposited in a public office.

The indictment charges that the defendant Peck after receiving the papers or documents before described, filed and deposited them in the office of the Bureau of Labor Statistics of the State of New York at the headquarters thereof in the New Capitol in the city of Albany.

In my opinion, then, the papers set forth in the indictment were deposited with a public officer and in a public office, within the meaning of the Penal Code. Were they so deposited by authority of law?

The papers set forth in the indictment were circulars containing questions asking for information such as the Bureau of Labor Statistics was authorized to collect, and the answers thereto of the per-

sons to whom such circulars were addressed. Chapter 205 of the Laws of 1886 authorizes the Commissioner to issue circulars and to compel answers thereto, the papers in question then were received by the Commissioner by authority of law.

In construing a penal statute we should keep in view the evil sought to be corrected. These papers contained information from which the Commissioner was to make his annual report to the legislature, as provided by the law creating his office, the collection of such information and presenting it to the public by such annual reports was the main purpose of the creation of the Bureau of Labor Statistics. Suppose, then, that after great trouble and expense, this information has been collected by letters, circulars and answers thereto and before he has had an opportunity to collate, digest and tabulate it for his report, some stranger to the office mutilates or destroys it, would not such an act come within the provisions of the statute — would it not be one of the acts sought to be reached by the section of the Code in question?

We must not inadvertently be misled in our construction of the law by the fact that the acts charged as a violation of it were committed by the officer with whom the papers were deposited, that makes no difference as to the law; it may make a difference as to the construction to be placed upon the act done and have great weight in determining whether such destruction was willful and unlawful, but that is something to be determined upon the trial from all the facts and circumstances, and it is not necessary that those facts and circumstances should be set forth in the indictment; neither is it necessary to allege in the indictment whether the papers in question were destroyed before or after they had been used, tabulated or digested, or any of the circumstances under which the papers were destroyed; such circumstances are matters of evidence not matters of fact necessary to be alleged in the indictment. The offense is a statutory one and all that is necessary is to set forth the offense as the statute defines it. (*Phelps* v. *People*, 72 N. Y., 334; *People* v. *Conroy*, 97 id., 62; *People* v. *Willett*, 102 id., 251; *People* v. *Weldon*, 111 id., 569.)

The circumstances of the crime, other than those set forth in the statute, need not be stated. (*People* v. *King*, 110 N. Y., 418–422; *People* v. *Giblin*, 115 id., 196.)

If we assume that under certain circumstances it would not be unlawful for the Commissioner of Statistics of Labor to destroy the papers in question, a question not necessary to be passed upon now, and which, therefore, is neither affirmed or denied, still it is not necessary for the indictment to negative the existence of such circumstances; they are matters of defense to be established by the defendants upon the trial. (*Flemming* v. *People*, 27 N. Y., 329; *People* v. *West*, 106 id., 293; *People* v. *Weldon*, 111 id., 569–574.)

The indictment sets forth the time and place of the commission of the offense and describes the papers destroyed with reasonable certainty and alleges the facts constituting the crime in the words of the statute and is, I think, sufficient.

It seems to me, therefore, that the papers described in the indictment were received by and deposited with a public officer and were also deposited in a public office within the meaning of the Penal Code, and that they were so received and deposited by authority of law and that their willful and unlawful destruction is a violation of section 94 of the Penal Code. It follows, therefore, that the judgment of the Court of Sessions should be reversed.

Let an order be entered accordingly, with leave to the defendants to plead over in such form as they may be advised.

Putnam, J. (dissenting):

By section 94 of the Penal Code, under which defendant was indicted, one who *unlawfully* removes, destroys or conceals a record, paper or document filed or deposited in a public office or with any public officer *by authority of law* is punishable. Therefore, to hold defendant under the indictment it must be determined that, under chapter 356, Laws of 1883, as amended by chapter 205, Laws of 1886, the duty devolved upon him to file, preserve and deliver over to his successor in office the papers mentioned in the indictment as destroyed or concealed by him. It is not claimed that said statute contains any express provision requiring the "Commissioner of Statistics of Labor" therein created to preserve such papers, but it is urged that they were received by him as a public officer of the State under the provisions of the statute, and hence are papers deposited with a public officer by authority of law within the meaning of the Penal Code.

The act creating a "Commissioner of Statistics of Labor" provides that the headquarters of the Commissioner shall be in the New Capitol, but no provision is made for furnishing him with suitable rooms or accommodations in which to file or preserve papers.

It provides that the duties of the said Commissioner shall be to collect, assort, systematize and present in annual reports to the legislature, within ten days after the convening thereof in each year, statistical details, etc. It provides the methods by which the Commissioner can obtain the statistical details to be set out in his report. He is given the power to send for persons and papers and examine witnesses under oath; to cause depositions to be taken; to inspect factories, warehouses, mines, manufactories and other establishments; to make personal inquiries in regard thereto and to seek information by circulars, to which answers must be returned within thirty days. The act leaves much to the discretion of the Commissioner as to the method of obtaining the statistical information to be contained in his annual report. If he examines witnesses the law does not compel him to take and preserve minutes of such examinations. If he inspects factories and other establishments personally, or through agents, he is not obliged to make a report or memoranda of the result of such inspection. If he obtains information through personal interviews and inquiries, no provision is made for making or filing any paper showing the result of such interviews. It is evident that, under the statute, the Commissioner, if he so elects (although, perhaps, difficult so to do), could obtain all the information used in his annual report by inspection, personal interviews of himself and agents with the proprietors of manufacturing and other establishments, and by the examination of witnesses, so that no papers whatever would be received that could be filed or preserved in his office.

In this case, however, the indictment alleges, and the demurrer admits, that the defendant, in the discharge of his duty as Commissioner, sent circulars to the owners, managers and lessees of mines, factories, manufacturing establishments and others requesting statistical information and received answers written upon said circulars, which circulars and answers he destroyed or concealed. Hence arises the question whether, under said act, the duty devolved upon the Commissioner to file and preserve the correspondence with various

parties throughout the State from whom he received information embodied in his annual report.

I have reached the conclusion that it was not the intent of the legislature in said act to cast on the " Commissioner of Statistics of Labor" the duty of filing and preserving correspondence entered into by him for the purpose of gathering statistical information. If there had been such a purpose I think the legislature would, in the act, have made special provisions for suitable rooms and clerks; also that information obtained by the examination of witnesses should be reduced to writing, when obtained by inspection a report of the result should be made, when, from personal interviews of himself or agents, a memoranda of the result of such interviews should also be preserved; and that such reports, memoranda and evidence, as well as all correspondence, should be preserved and filed by the Commissioner in his office. Unless some report or memoranda of information obtained by the examination of witnesses, inspection and personal interviews is filed and preserved in the office of the Commissioner, it is difficult to see of what use to the Commissioner, his successor in office, or anyone else, would be the preservation of that fragmentary part of the statistical information contained in the annual report derived from correspondence.

I think, therefore, as the duty is not, in terms, imposed upon the Commissioner to file and preserve his correspondence, it is also evident, from the language and provisions of the statute in question, that it was not within the legislative intent that such an obligation should devolve upon him. Where a public officer is required to preserve and file papers, the obligation to do so is generally plainly declared by the legislature. But, as was said *In the Matter of John R. Corryell* (22 Cal., 179–185), where the defendant was indicted for altering a document belonging to a public office, I can find no law requiring the defendant to preserve the papers, for the alleged destruction of which he was indicted. His circulars, and the answers thereto, having served their purpose, have become *functus officio.*

Conceding that the circulars and answers thereto mentioned in the indictment are public papers, Peck is not criminally liable unless they were deposited with him by authority of law and he unlawfully destroyed them. Although a public officer of the State receives

papers as such he is not bound to preserve them unless there is a duty on his part prescribed by law so to do.

Every paper in a public office, though properly received therein, does not become a public record. It must be filed or deposited by authority of law. (See 20 Am. & Eng. Ency., 507; *Smith* v. *Lawrence*, 12 Mich., 431; *Milford* v. *Greenbush*, 77 Me., 331, 332; *Carrington* v. *Potter*, 37 Fed. Rep., 768; *Fox* v. *Lyon*, 27 Pa., 15; *Bouchaud* v. *Dias*, 3 Denio, 238.)

The indictment after stating the duty of the defendant as "Commissioner of Statistics of Labor," and specifying the circulars sent out by him requiring statistical information and the answers received written on said circulars, and which were so received by said Peck in the discharge of his duty as a public officer by authority of law at his office in the capitol, alleges that he willfully, unlawfully and feloniously concealed, mutilated and destroyed said papers.

The indictment does not allege whether said circulars and answers were destroyed before or after the information contained therein had been used, tabulated and embodied in the annual report. Hence, if the defendant might legally destroy the papers after the information contained therein had been utilized, although he could not do so before, the demurrer was properly sustained. For, in that view to sustain the charge against the defendant under the indictment, he must not only have destroyed the papers in question but have done so before the information derived therefrom had been tabulated. It was necessary for the people to allege that fact in the indictment as it would be to prove it upon the trial. "Every indictment must contain a certain description of the crime of which the defendant is accused, and a statement of the facts by which it is constituted." (*Lambert* v. *The People*, 9 Cow., 586; Code of Crim. Pro., § 284.)

In *People* v. *Gates* (13 Wend., 317), it is said: "In a criminal charge   *   *   *   there is no latitude of intention to include anything more than is charged. The charge must be explicit enough to support itself." (See, also, *Dord* v. *The People*, 9 Barb., 675.) And it is well settled that the general charge in the indictment that the defendant's act was committed willfully, unlawfully, feloniously, etc., does not aid a defective statement of the facts. (*Commonwealth* v. *Hunt and others*, 4 Met., 128.)

Therefore, as the indictment does not allege the fact that the alleged mutilation or destruction of said papers was prior to their being tabulated and utilized by the defendant, we may assume, as I have done in my discussion of the case, that the alleged criminal act of defendant was subsequent to such tabulation and utilization.

If the indictment had alleged that defendant, having sent out circulars and received answers thereto containing statistical information, which circulars and answers were deposited with him in his office, at the capitol, willfully destroyed the same before the information so derived was used, tabulated or embodied in his annual report it would have presented a different case from that before us. In that case it is possible that said papers might be deemed documents deposited with a public officer by authority of law. But it is very different after the commissioner has used the information contained in such papers. The circulars and answers then become *functus officio* — mere waste paper. A paper, in my judgment, sent to a public officer for a certain purpose until that purpose is accomplished may be deposited by authority of law, but when such paper has served its purpose it becomes of no value. In this case, although it should be deemed that the correspondence of the Commissioner *until utilized* were papers deposited in his office by authority of law for a certain purpose, within the meaning of section 94 of the Penal Code, when the information contained therein was utilized and embodied in the annual report, in the absence of a statute requiring the commissioner to preserve the waste papers of his office, I think such correspondence ceased to be deposited with him by authority of law.

Counsel calls our attention to the provisions of the Revised Statutes (1 R. S., 124, 125, §§ 50, 51, 52, 53), in reference to the duty of an officer in delivering the books and papers pertaining to his office to his successor. But the papers a public officer is legally bound to deliver to a succeeding officer are only those he is obliged to file and preserve. If no duty rested upon defendant to preserve the papers in question, he could destroy them and the provisions of the statute to which appellant refers do not apply.

I do not think the doctrine laid down in the *Irish Society* v. *The Bishop of Derry* (12 Cl. & F., 641–688), referred to in *Sturla* v.

*Freccia* (Law Rep. 5 App. Case, 623–642), to which our attention is called by the appellant, is applicable to this case. Had defendants been indicted for destroying *his annual report* made to the legislature the cases cited would have been more applicable. The returns of the bishop considered in those cases were like the return of the defendant to the legislature. It is quite evident that the returns of the bishop to writs issued by the crown in the cases cited are not like the unsworn statements, either oral or written, made by various persons in the State to the "Commissioner of Statistics of Labor" in answer to inquiries to be used by him in making his report to the State.

I conclude that before defendant should be deemed criminally liable and subject to the severe punishment provided by section 94 (*supra*) — imprisonment for five years — for the destruction of the correspondence which must be deemed under the indictment to have been utilized and tabulated by him, there should be a reasonably clear provision of some statute requiring him to preserve the papers accumulated in his office. As before suggested, the correspondence having been utilized, seems mere waste paper — and there is no statutory provision, as there is no object, for its preservation. Having been used, the law does not require its preservation, and hence after it is utilized, *it is not deposited with a public officer by authority of law.*

I think any other construction of the statute would be a strained one. As stated in *Lamb* v. *State* (67 Md., 534), "it is the duty of the courts to interpret and administer the legislative will; but in cases of criminal cognizance they must resolutely determine never to exceed it."

I am, therefore, in favor of affirming the judgment rendered in the court below.

Judgment reversed, with judgment for the People on the demurrer, with leave to the defendants to withdraw demurrer and plead to the merits.