(55 Misc. Rep. 13.)

## In re LANCE.

(Supreme Court, Special Term, Clinton County. June, 1907.)

**1. CONSTITUTIONAL LAW—DUE PROCESS OF LAW—CORRUPT PRACTICES ACT.**

Corrupt Practices Act, Laws 1906, p. 1385, c. 502, providing that any person who expends money to promote the success or defeat of a political party, or candidate for public office, other than his own personal expenses, shall file with the Secretary of State a written statement of the money so expended, and that any association to promote the success or defeat of a political party, or candidate for public office, shall file a statement of all contributions and disbursements, and that if any person or candidate shall fail to file such a statement, or shall file a false or incomplete statement, the Supreme Court, or a justice thereof, on application, shall hold a summary inquest as to such failure, or false or incomplete statement, and if it shall be found that there was a willful intent to defeat the statute, or any person or committee shall fail to file any statement required by the court, the person or committee shall be punished as therein prescribed, is in violation of the constitutional provision that no

person shall be deprived of his liberty or property without due process of law.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Constitutional Law, § 739.]

**2.** ELECTIONS—VIOLATIONS OF ELECTION LAWS—CORRUPT PRACTICES ACT.

Corrupt Practices Act, Laws 1906, p. 1388, c. 502, § 213, requiring that the petition to the Supreme Court, or a justice thereof, for a summary inquest as to the failure of a person or committee to file a statement of election expenses and disbursements, or complaining that a statement filed is false or erroneous, shall be filed within 30 days after the election, is not complied with by presentation to a justice of the Supreme Court within that time, though the justice retain the same.

Petition by Edward J. Lance, under Laws 1906, p. 1385, c. 502, for a summary inquest as to the failure of the treasurer of the Republican county committee to file a statement of campaign expenses or disbursements. The committee appeared specially, and moved to dismiss the prosecution of the inquest on the ground that the act was unconstitutional, and that the justice was without jurisdiction. Motion granted.

Dexter, Osborn & Fleming (James W. Osborn, Edgar T. Brackett, William Church Osborn, Henry E. Barnard, and George S. Bixby, of counsel), for petitioner.

John E. Judge, for Attorney General.

John H. Booth and S. L. Wheeler, for respondent.

SPENCER, J. This is a summary inquest by a justice of the Supreme Court as to the sufficiency of a certain statement made by the treasurer of the Republican county committee of Clinton county and, on the 21st day of November, 1906, filed by him with the Secretary of State, pursuant to chapter 502, p. 1385, Laws 1906. The committee, respondent, appears specially and objects to the prosecution of the inquest on grounds that the act under which the same is to be taken is in violation of the state Constitution, and that the justice is without jurisdiction.

The statute referred to is known as the "Corrupt Practices Act," so called because it is intended to prevent the corrupt use of money in connection with elections. It was adopted by the Legislature, not as a separate and independent enactment, but as supplemental to the election law, and should be regarded as a part of the same. Many of its provisions are not intelligible unless so construed. It is a new departure in the regulation of political parties, its sole intention being, as expressed in its title, to provide for the publication of political contributions, the expenditures of political campaign funds, and for judicial inquiries in regard to the same. In order to accomplish these results, it provides (1) that any person who independently expends money for the purpose of promoting the success or defeat of a political party, or the election or defeat of a candidate for public office, other than for his own personal expenses, shall file with the Secretary of State a written statement of the money so contributed and expended; (2) that any association of three or more persons co-operating to aid or promote the success or defeat of a political party or principle, or to aid in the

election or defeat of a candidate for public office, shall be regarded as a political committee and shall have a treasurer, who shall receive and expend the moneys contributed for those purposes, and who shall file a statement with the Secretary of State of all such contributions and disbursements.

In order to insure the filing of such statements, the statute provides that, in case any person or committee shall fail to file such a statement within the time prescribed, or shall file a false, erroneous, or incomplete statement, the Attorney General, a district attorney, or candidate voted for at the election, or any five qualified voters who voted at such election, may apply to the Supreme Court or to a justice thereof, who thereupon must forthwith hold a summary inquest inquiring as to such failures; and, in case the court or justice shall find that such person or committee has failed to file such a statement, or has filed a false or incomplete one, without willful intent, the court or justice may render judgment requiring the person or committee to file the statement or file an amended statement within 10 days from the entry of such judgment; and, if the court or justice shall find that such person or committee was guilty of a willful intent to defeat the provisions of the statute, or shall fail to file any statement as required by the court or justice, the person or committee shall be adjudged guilty of a contempt of court and liable to a fine not exceeding $1,000 or to imprisonment for one year, or both.

This brief summary of the statute indicates its novelty. Many of its provisions are so clumsily expressed that it is no wonder that counsel differ widely as to their meaning. It was the hope of the justice before whom this inquest is sought to be taken that the Appellate Division, from whom a writ of prohibition has been sought, would confer a public benefit by expressing an opinion upon the important questions raised, and especially the one having reference to the filing of the petition, as that question has some personal relations to the justice. But the Appellate Division has declined to issue either an alternative or peremptory writ, and therefore the questions remain to be disposed of by the justice before whom the inquest is sought. I appreciate the difficulties of the undertaking, and approach it with no little concern.

The first objection urged by the respondent is that the act is in violation of the due process of law provision of the state Constitution, in that it attempts to authorize the court or a justice thereof to award judgment without notice to the person subjected thereto. It is true the statute does not require notice of the inquest, but only provides that an interested party may appear. It thus on its face justifies the respondent's contention. But it is so difficult to believe that the well-known promoters of this act and the Legislature would unwarily run foul of the simplest and best-known provision of the organic law, that we search for some theory or line of construction to obviate the objection. The draftsman seems to have been minded to authorize the court or justice to prosecute a proceeding akin to an investigation by a grand jury, and also a proceeding for contempt of court. The former is in its nature ex parte—that is, without notice; but the latter may be had only after notice to the person proceeded against. These two

distinct and well-known proceedings have been so confused in the language of the statute that support is found for the respondent's contention that the two have been so welded together as to make the entire proceeding violative of the fundamental law.

The question for us is whether this is so, or whether a distinction may be drawn so as to regard the statute as providing for two separate and distinct proceedings, neither dependent upon the other. I have labored diligently to discover and set forth such a line of demarcation, but have failed to find one. The proceeding seems to be a continuous one. It is true an inquest may result with no person found delinquent; but a finding of delinquency on the part of any person requires an immediate judgment to that effect, including a requirement that such delinquent make compliance therewith. A contempt proceeding may thereon be taken, which, no doubt, is the same as in other instances of contempt for noncompliance with orders or judgments, which, although taken separately, rest for justification upon the binding force of former orders or judgments. If such former orders or judgments be taken without notice, they are void. They may not be made the basis for proceedings in contempt. Hence I am of the opinion that this act in this respect is in violation of the organic law, which provides that no person shall be deprived of his liberty or his property without due process of law.

The statute, if it means anything, means that the inquest may be ex parte. In order to have saved it from the condemnation of the Constitution, a provision should have been inserted requiring notice to any person whose affairs are investigated before judgment be taken against him. It is impossible in a statute of this character to explain away the use of the word "judgment." No word in our language has a more definite and fixed meaning. It implies that what is thereby stated as determined is the sentence of the law, decreed and pronounced after due inquiry and deliberation. The matters thereby adjudicated are regarded as settled until reversed by a higher authority. The Legislature must be presumed, in the framing of the statute, to have employed the word with knowledge of its meaning, and with intent that full effect be given thereto. To read into the law another and different meaning of the term would open the door to the unsettlement of the most solemn and binding covenants known among men, and to which credence is required to be given by every court in the United States.

I am urged by the petitioner to find a distinction between violations of the statute which are willful and those which are not; and it is argued that, if the statute does violate the fundamental law as to willful violations, it does not as to those which are not willful, and therefore the present inquest, applying only to violations not willful, may stand. But I fail to read the petition as making such a distinction; and, if it does, I am unable to separate the provisions of the statute in the manner suggested. To my mind the reference to willful violations has application only to the measure and manner of punishment. If the Legislature intended any other, it has carefully concealed it from observation. A judgment must follow a violation which is not

willful as in the case of one that is willful. Otherwise, there would be no provision for correcting willful violations.

We now come to the second objection made by the respondent, that the justice is without jurisdiction because of the failure of the petitioner to file his petition within the time fixed by the statute. The statute (section 213) provides as follows:

"Such petition shall be filed within thirty days after any election in respect to which the allegations of such petition may relate."

It is silent as to where or with what official the petition shall be filed. The matter is left entirely to inference. The statute is, however, clear that the right to institute the inquest is limited to the period beween the time of the election and the time when the petition must be filed. The filing of the petition is, therefore, a jurisdictional act; and, if not filed within the period specified, the right to institute the inquest expires. As the facts of jurisdiction may not be presumed, the petitioner has the burden of establishing these facts. Gates v. State, 128 N. Y. 221, 28 N. E. 373. The facts are without dispute. The petition was verified by the petitioner on the 5th day of December, 1906, and on the following day his attorneys presented it to the justice at chambers in the city of Brooklyn, N. Y. The petition having relation to the statement filed by the treasurer of the Republican committee of Clinton county, the justice suggested that the attorneys file the same in the clerk's office of that county. But at that time it was too late to accomplish such filing within 30 days; and at the request of said attorneys the justice retained the petition in his possession, they contending that by the statute the petition should be filed with him. He retained the same in his possession until the 9th day of January, 1907, when by the consent of all the parties it was deposited with the clerk of Clinton county. The petitioner did not apply for an order until the 21st day of December, 1906.

The respondent contends that this is a special proceeding and that the filing of papers therein is regulated by section 825 of the Code of Civil Procedure. That section provides in substance that, when such a proceeding is instituted before a justice of this court, the papers must be filed with the clerk of a county directed by the justice, or, if no direction, then in the clerk's office of a county where one of the parties resides. In this instance no direction was given. Assuming that the section has application (Code Civ. Proc. § 825; People v. Elliott, 172 N. Y. 146, 64 N. E. 837; Matter of Town of Hempstead, 32 App. Div. 6, 52 N. Y. Supp. 618; In re Village of Plattsburgh, 157 N. Y. 78, 51 N. E. 512), there can be no question but that the deposit of the petition with the justice was not in compliance therewith.

If the Code section does not have application, such deposit was not a filing within the intent of the statute. The sole object of filing is to deposit the document in a public place, so that it may be seen and examined by any person interested. It is thereby made a public record. There are numerous decisions in this and other states to the effect that there can be no filing of a paper in a legal sense, except by its delivery to an official whose duty is to file papers and who is re-

quired to keep and maintain an office or other public place for their deposit, and that the paper must either be delivered personally to such officer, with the intent that the same shall be filed by him, or deliver-- ed at the place where the same should be filed. 3 Words and Phrases, 2764; People v. Peck, 22 N. Y. Supp. 576, 579, 61 Hun, 560; Matter of Norton, 34 App. Div. 79, 53 N. Y. Supp. 1093. If these adjudications by the courts are correct, then there has been no sufficient filing of the petition in these proceedings.

It is a matter of common knowledge that it is no part of the duties of a justice of this court to receive papers for filing or to file the same. He has no place nor office, and is not required by law to keep one, for the deposit and filing of papers. Furthermore, he has no particular station, but is constantly moving from place to place in holding courts at stated terms. The statute being silent, it will be presumed that the intention was that the petition should be filed with an officer whose duties pertain to that service, and who is required by law to keep and maintain a place or office for that purpose. A justice of this court is not such an officer.

The statute contains several references to the action by the justice upon the petition, and in each instance uses the word "presentation." Neither by word nor inference does it indicate that the petition is to be filed with the justice. If such were the intention, the Legislature would not have used the word "presentation," as distinguished from "filing." A paper once filed with a justice, if such a thing be possible, need not be presented. It is presented when the application for an order thereon is made. This is a well-understood function. The presentation of a petition to an officer with whom it is already on file is a brutum fulmen.

But it is said that an inference may be drawn from section 212, where the undertaking is mentioned as filed with the justice; and the argument is made: Why not, also, the petition? Answer to this query is found in the language of the section itself. It does not employ the indefinite article in referring to the justice, as in section 210, where the justice is distinguished from the court, but refers only to the justice then and there presiding in the court when the presentation of the petition is made. This, of course, is a strict construction. But, if the filing of an undertaking with a justice out of court was thereby intended, it is only by implication; and one implication may not support another. Furthermore, practice before the court is different from that before a justice. A court is not a person, but an organized body, meeting at fixed times and places for the hearing and decision of cases, having attorneys to present and manage its business, clerks to record and attest its acts, and ministerial officers to execute its commands. 11 Cyc. 652–654. In order, therefore, to institute an inquest before the court, it would be necessary to make application at a stated term. As the statute is silent as to the venue, the application may probably be made at any term within the state. The proceeding being of a transitory character, the venue is the county wherein the court is sitting at the time the application is made. The inquest must be held there, as a court may not move from place to place. It may there-

fore be inferred that the papers should be filed in the county of venue. But, when the application is to a justice, no such results follow. He may exercise his powers in any part of the state. There is no venue. Consequently there is no inference as to the filing of papers. The mere presence of the judge in one part of the state or another is of no consequence. He acts in any place where he may happen to be—at home, aboard the railroad train, or in the forest. While the court pursues the inquest at the place where it sits when the application is made, the justice is not so limited, but may indicate by his order when and where it shall be held. The inquest being ex parte and transitory, he may pursue it at such times and places in the judicial district as shall best serve the purpose. Matter of Fairchild, 151 N. Y. 359, 45 N. E. 943. We thus see that, while an inference might possibly be drawn from the fact of venue in case the inquest is by the court, no such inference obtains when the inquest is by the justice.

But it is not necessary on this motion to decide where the petition should have been filed. It may be that it should have been filed with the Secretary of State, where the statement, the subject-matter of the inquest, is required to be filed. It may be that, when the inquest is made by the court, it should be filed with the clerk of the court in the county where the court is then sitting. It may be that, when the inquest is by a justice out of court, as in this instance, it should be filed where he directs, or in the clerk's office of the county where one or more of the parties reside. I shall not attempt to solve any of these puzzles. It will suffice for the present purpose to hold that the deposit of the petition with the justice was not such a filing as the statute contemplates.

The motion of respondent must, therefore, prevail, and the order directing the inquest be vacated and set aside.

Ordered accordingly.