PEOPLE *v.* GANSLEY.

ELECTIONS—CRIMINAL LAW—PURITY OF LIQUOR ELECTION—LOCAL OPTION—CORPORATIONS—DONATIONS.

Act No. 109, Pub. Acts 1913 (1 Comp. Laws 1915, § 3841), provides that no sums of money shall be paid and no expense authorized or incurred by or on behalf of any candidate who has received a nomination to any office or position in excess of a stated amount; section 1 of the

statute limits the money to be paid or expense incurred by or on behalf of any candidate to be paid by him in order to secure or aid in securing his nomination to office and that no sum of money shall be paid and no expense authorized by or on behalf of any candidate contrary to the provisions of the statute. Section 11 forbids any person not a candidate or treasurer of a political committee to pay, give, lend or agree to pay, give or lend any money for election expense, unless given to a candidate or to a political committee. Section 14 provides that no officer, director, stockholder, attorney, agent or any other person acting for any corporation under the laws of this or of any other State, or foreign country, except corporations formed for political purposes shall pay money of the corporation to any candidate or political committee for the payment of any election expenses whatsoever. *Held*, that the statute applies to elections other than those at which candidates only are to be chosen, and applies to the payment of money by the director of a brewing company to a so-called "Personal Liberty League," in a local-option campaign. KUHN, OSTRANDER, BIRD, and BROOKE, JJ., dissenting.

Exceptions before sentence from Ingham; Collingwood, J. Submitted October 28, 1915. (Docket No. 107.) Decided June 1, 1916.

Jacob Gansley was convicted of violating the corrupt practices act. Affirmed.

*Grant Fellows*, Attorney General, *L. W. Carr*, Assistant Attorney General, and *William C. Brown*, Prosecuting Attorney, for the people.

*Warner, Raudabaugh & Person* (*Fred A. Baker*, of counsel), for respondent.

STONE, C. J. This case is brought here upon exceptions by the respondent, after conviction, and before sentence, for an alleged violation of section 14 of Act No. 109, Pub. Acts 1913 (1 Comp. Laws 1915, § 3841), entitled:

"An act to regulate and limit nomination and election expenses, to define and prevent corrupt and illegal practices in nominations and elections, to secure and protect the purity of the ballot, and to require accounts of nomination and election expenses to be filed, and providing penalties for the violation of this act."

The accusation set forth in the information reads as follows:

"That heretofore, to wit, on the 1st day of April, A. D. 1914, at the city of Lansing, and in the county aforesaid, one Jacob Gansley, being then and there an official, director, and manager of the Lansing Brewing Company, a Michigan corporation, and acting for said Lansing Brewing Company, a Michigan corporation, did pay, give, and lend to a certain political committee, to wit, the Personal Liberty League of Lansing, Michigan, the sum of five hundred ($500.00) dollars, in money belonging to the said Lansing Brewing Company, for the payment of election expenses incurred in opposing local option at an election to be held and which was held on the 6th day of April, A. D. 1914, in the said county of Ingham, to ascertain the will of the electors of said county, whether or not the manufacture of liquors and the liquor traffic should be prohibited within the limits of said county, the said Lansing Brewing Company being then and there a corporation incorporated and existing under the laws of the State of Michigan and doing business at the city of Lansing in said State, and not being a corporation formed for political purposes; the said Personal Liberty League then and there being a committee opposing local option at the election to be held and which was held in said county of Ingham on the 6th day of April, A. D. 1914, to ascertain the will of the electors of said county, whether or not the manufacture of liquors and the liquor traffic should be prohibited within the limits of said county—contrary to the form of the statute in such case made and provided, and against the peace and dignity of the people of the State of Michigan."

Upon arraignment the respondent stood mute, but moved the court to dismiss the information for the

reason: That it set forth no offense known to the law. That said section 14 is unconstitutional and void because:

(1) Said section is not within the title to the act, and is in conflict with the provision of the Constitution of this State requiring the object of an act of the legislature to be set forth in its title.

(2) That said section 14 is in conflict with the provisions of the Fourteenth Amendment of the Constitution of the United States, that no State shall deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws. That corporations are persons within the meaning of the Fourteenth Amendment of the Constitution of the United States, and said section 14 denies to all corporations, domestic or foreign, other than corporations organized for political purposes, the right secured to natural persons by section 3 of said act to make expenditures of money for nomination or election expenses.

(3) That the title of said act confines it to the nomination and election of candidates for office, and it can have no application to local option elections in the several counties of the State, under the local option prohibitory liquor laws of this State.

(4) That said section 14 is in conflict with section 4 of article 2 of the Constitution of this State.

(5) That the act is indefinite, uncertain, and vague, and the intent and meaning of the same cannot be interpreted.

(6) That it is class legislation, especially section 14 of the act.

The trial court overruled the motion, to which ruling respondent duly excepted, and thereupon a plea of not guilty was entered by order of the court. The assignments of error are to the effect that the court erred in overruling respondent's motion to dismiss the information, which motion was made at the time said respondent was arraigned, and renewed after the evidence had been submitted; also in adjudging the re-

spondent guilty, contrary to the objections to said information. In this court counsel for respondent argued the questions presented under the following heads:

(1) Whether the act has any application to elections under the local-option prohibitory liquor law.

(2) That section 14 of the act is unconstitutional and void, *first,* because it denies to corporations, as artificial persons, the right granted to natural persons to make the legitimate expenditures authorized by section 3 of the act; and, *second,* it denies to corporations the right to make such lawful expenditures as may be necessary to protect their interests in contests to be determined by the people at the polls.

(3) That section 14 is also in conflict with the provision of the Constitution of this State, which (section 4, art. 2) reads:

'Every person may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of such right; and no law shall be passed to restrain or abridge the liberty of speech or of the press."

(4) That the whole act should be declared unconstitutional and void.

It may be said at the threshold of this opinion that the construction and validity of the act in question, in so far as it affects the conduct of the respondent, are here involved.

1. As we understand the first position of counsel for the respondent, it is that this act, which is generally spoken of as the "Corrupt Practices Act," has no application to what may be termed local-option elections; "that, looking at the title and body of the act together, neither should be construed as applying to local-option elections." We have with some care made an analysis of this act, copying such sections as are particularly relevant, and, as this is the first time we have been called upon to examine the act, we include such analysis here:

Section 1 of the act (1 Comp. Laws 1915, § 3828) limits the sum of money to be paid, or expenses authorized or incurred, by or on behalf of any candidate, *to be paid by him* in order to secure or aid in securing his nomination to any public office or position in this State. It also provides that no sums of money shall be paid, and no expense authorized or incurred, by or on behalf of any candidate who has received a nomination to any such office or position, in excess of a stated amount; further, that no sum of money shall be paid, and no expense authorized or incurred, *by* or *on behalf of* any candidate *contrary* to the *provisions* of the act.

Section 2 (1 Comp. Laws 1915, § 3829) provides that every political committee shall appoint a treasurer, who shall receive, keep, and disburse all sums of money which may be collected or received by such committee, or by any of its members, for election expenses; and unless such treasurer is first appointed, it shall be unlawful for a political committee or any of its members to collect, receive, or disburse money for any such purpose.

Section 3 (1 Comp. Laws 1915, § 3830) provides that no candidate, and no treasurer of any political committee, shall pay, give, or lend, or agree to pay, give, or lend, either directly or indirectly, any money or other valuable thing for any nomination or election expenses whatever, except for the *11 purposes* therein specified. It also provides that none of the provisions of the act shall be construed as relating to the rendering of services by speakers, writers, publishers, or others, for which no compensation is asked or given.

Section 4 (1 Comp. Laws 1915, § 3831) provides that every candidate and every treasurer of a political committee shall file within the time specified a full, true, and detailed account and statement of all money

received or disbursed by him for nomination or election expenses, and specifies what such statement shall contain.

Section 5 (1 Comp. Laws 1915, § 3832) makes it unlawful to administer the oath of office, or to issue a commission or certificate of nomination or election, to any person nominated or elected to any public office until he has filed an account as required by the act, and provides that no such person shall enter upon the duties of his office until he has filed such account, nor shall he receive any salary or fees for any period prior to the filing of the same.

Section 6 (1 Comp. Laws 1915, § 3833) provides that such accounts shall be open to public inspection.

Sections 7, 8, 9, and 10 (1 Comp. Laws 1915, §§ 3834-3837) relate to the statement, and what may be done in case it is not filed, or is not conformable to the statute.

Section 11 (1 Comp. Laws 1915, § 3838) is as follows:

"No person who is not a candidate, or the treasurer of a political committee, shall pay, give or lend, or agree to pay, give or lend, any money whether contributed by himself or by any other person, for any election expenses whatever, except to a candidate or to a political committee."

Section 12 (1 Comp. Laws 1915, § 3839) provides that no money paid shall be credited to any person other than the one furnishing it.

Section 13 (1 Comp. Laws 1915, § 3840) makes it unlawful for any candidate, or treasurer of a political committee, or person acting as such treasurer, to disburse money received from any anonymous source.

Section 14 (1 Comp. Laws 1915, § 3841) is the section which respondent is charged with having violated. It reads as follows:

"No officer, director, stockholder, attorney, agent or any other person, acting for any corporation or joint stock company, whether incorporated under the laws of this or any other State or any foreign country, except corporations formed for political purposes, shall pay, give or lend, or authorize to be paid, given or lent, any money belonging to such corporation to any candidate or to any political committee, for the payment of any election expenses whatever."

Section 15 (1 Comp. Laws 1915, § 3842) makes it unlawful for any employer to threaten employees, etc.

Section 16 (1 Comp. Laws 1915, § 3843):

"No publisher of a newspaper or other periodical shall insert, either in its advertising or reading columns, any paid matter which is designed or tends to aid, injure or defeat any candidate or political party or organization, or *measure before the people,* unless it is stated therein that it is a paid advertisement. No person shall pay the owner, editor, publisher or agent of any newspaper or other periodical to induce him to editorially advocate or oppose any candidate for nomination or election, and no such owner, editor, publisher or agent shall accept such payment."

Sections 17 and 18 (1 Comp. Laws 1915, §§ 3844, 3845) deal with false statements against candidates, and penalties for violation of the provisions of the act.

We quote from section 19 as follows:

"Terms used in this act shall be used as follows, unless other meaning is clearly apparent from the language or context, or unless such construction is inconsistent with the manifest intent of the law;   *   *   * 'Political committee,' or 'committee,' shall apply to every combination of two or more persons who shall aid or promote the success or defeat of a candidate, or a political party or principle or measure."

It is clear that while most of the provisions of the act relate to the conduct and duties of candidates and political committees, yet that it was intended to regulate and control all elections and election expenses, wherever the electors are called upon to decide any

measure or measures that may be before the people to be voted upon, is, we think, equally clear. The statute (2 Comp. Laws, § 5420; 2 How. Stat. [2d Ed.], § 5024 [2 Comp. Laws 1915, § 7087]) provides that the registration of the qualified electors, the manner of voting, and of holding and conducting an election under the local-option provisions, shall be the same in every respect as in case of annual township elections, or the election of members of the board of supervisors, except as otherwise provided. In our opinion the voting upon a proposed constitutional amendment, or upon the question of local prohibition, is as much an election, as is the voting for candidates for office. The supposed abuse to be corrected is as apparent in one case as the other. The fundamental principle involved in construing a measure of this kind is to carry out the legislative intent.

To ascertain that intent, we should consider, not only the remedy expressed, but the evil sought to be reached. That partisan zeal and spirit are as intense when canvassing and voting upon the question of local prohibition of the liquor traffic, as when canvassing and voting for candidates for office, is too evident to need discussion. The legislature probably deemed such reasons sufficient. The expression, "measure before the people," in section 16, and the definition of "political committee," in section 19, aid us in reaching the conclusion that the act was intended to apply, and does apply, to elections other than those at which only candidates for public office are to be chosen.

It is contended, however, that the matter of canvassing, discussing, and voting on local option cannot be regarded as acting with reference to "a political party or principle or measure," and counsel say:

"The local option forces in any county are not political parties, and to vote for or against county prohibition is not to vote for a political principle or measure."

We think this too narrow a view of the question. When the word "political" is used as it is in this act, even if held to qualify the words "principle or measure," it is a narrow construction to hold that it applies to one or more of the recognized political parties only. The word has a much broader meaning, and often refers to matters of public policy. The first three definitions of the word as given by Webster are:

"1. Of or pertaining to polity, or politics, or the conduct of government, referring in the widest application to judicial, executive and legislative branches; of or pertaining to, or incidental to, the exercise of the functions vested in those charged with the conduct of government; relating to the management of affairs of State; as, *political* theories.

"2. Having, or conforming to a polity, or settled system of administration; as a *political* body or government.

"3. Of or pertaining to the exercise of the rights and privileges or the influence by which the individuals of a State seek to determine or control its public policy; having to do with the organization or action of individuals, parties or interests that seek to control the appointment or action of those who manage the affairs of State; as, his *political* affiliations were with the Republicans."

The word "political" is defined by Bouvier to be pertaining to policy or the administration of government. *People* v. *Morgan,* 90 Ill. 558, 563. See, also, Black's Law Dictionary, defining "Political."

The supreme court of New York, in the case of *In re Lance,* 55 Misc. Rep. 13 (106 N. Y. Supp. 211), in considering the corrupt practices act of that State, referring to the word "judgment," said:

"The legislature must be presumed, in the framing of the statute, to have employed the word with knowledge of its meaning, and with intent that full effect be given thereto."

We think that language is applicable here. See, also, upon this subject, the following cases cited by counsel for the people: *Winspear* v. *District Township*, 37 Iowa, 542, holding that a school district township is a political corporation, within the meaning of their constitution referring to political or municipal corporations. See, also, *McConaughy* v. *Secretary of State*, 106 Minn. 392 (119 N. W. 408), defining what is meant by "political" question; *State* v. *Shanks*, 178 Ind. 330 (99 N. E. 481); *State* v. *Goodwin*, 169 Ind. 265 (82 N. E. 459). The last two cited cases relate to the construction of statutes.

In *State* v. *Patterson*, 67 Fla. 499 (65 South. 659), the corrupt practices act of Florida (Acts 1913, chap. 6469, 6470), were before the court for construction. It was said:

"The object of the law is to prevent corruption, fraud, and deception of all kinds, and the statutes should be enforced to accomplish the legislative purpose."

This court has frequently stated the rule to be applicable in construing a legislative enactment. *Whipple* v. *Circuit Judge*, 26 Mich. 342; *Board of Regents* v. *Auditor General*, 167 Mich. 444 (32 N. W. 1037); *Rohde* v. *Circuit Judge*, 168 Mich. 683, 689 (131 N. W. 523, 135 N. W. 457); *Mackin* v. *Axle Co.*, 187 Mich. 8 (153 N. W. 49). No reason is suggested why local option elections should have been omitted. We are of the opinion that the safeguards established by the act were intended for the protection of all elections.

It is next urged by counsel for respondent:

"That local option elections and activities are not within the title of the act, and if the body of the act is construed to apply to them, it is to the extent of such application unconstitutional and void."

We understand that counsel here invoke the first

sentence of section 21 of article 5 of the Constitution of Michigan, which provides that:

"No law shall embrace more than one object, which shall be expressed in its title."

The specific objection seems to be that section 14 of the act is not within the scope of the title or germane thereto. The title is broad in its scope. It was plainly designed to safeguard and protect the ballot by forbidding certain acts and imposing certain regulations and requirements. Among other things, it was:

"To define and prevent corrupt and illegal practices in nominations and elections; to secure and protect the purity of the ballot."

As counsel for the people have said:

"Under such title it was competent to include in the act any provision calculated to aid in accomplishing such object and thus carry out the purpose of the legislature. Presumably, it was the view of the law-making body that the practices indulged in by certain corporations of making contributions for campaign purposes had become objectionable, and subversive of good government, and consequently of the public welfare. Therefore, and as incidental to the protection sought to be attained for the 'purity of the ballot,' such practice was prohibited."

The courts in a long series of cases have enunciated the principle that the presumption is in favor of the constitutionality of a statute. This principle has been expressed in many different forms. It has been declared that in no doubtful case should the courts pronounce legislation to be contrary to the Constitution. It has been said that every intendment is in favor of its validity, and that it must be presumed to be constitutional unless its repugnancy to the Constitution clearly appears. See collection of authorities in 6 R. C. L. p. 97; *Rouse, Hazard & Co.* v. *Circuit Judge,* 104 Mich. 234, 239 (62 N. W. 359, 27 L. R. A. 577,

53 Am. St. Rep. 457) ; *Sears* v. *Cottrell*, 5 Mich. 251, 259. The clause of the Constitution here invoked has been repeatedly before this court. In *Kurtz* v. *People*, 33 Mich. 279, Justice CAMPBELL, referring to this provision, said:

"It is a very wise and wholesome provision, intended to prevent legislators from being entrapped into the careless passage of bills and matters foreign to the ostensible purpose of the statute as entitled. But it is not designed to require the body of the bill to be a mere repetition of the title. Neither is it intended to prevent including in the bill such means as are reasonably adapted to secure the object indicated by the title."

See, also, the language of Judge COOLEY in the seventh edition of Constitutional Limitations, page 205; also, *Conn. Mutual Life Ins. Co.* v. *State Treasurer*, 31 Mich. 6; *Mackin* v. *Axle Co., supra.*

Our attention has been called to the case of *State* v. *Paris*, 179 Ind. 446 (101 N. E. 497). The corrupt practices act of Indiana (Acts 1911, chap. 121) is entitled:

"An act concerning corrupt practices at elections, caucuses and primaries, and the collection and disbursement of campaign funds."

It was held in the case last cited that such a title was sufficient to cover the criminal features of the act, within the provisions of the constitution of that State, which requires the subject of an act to be expressed in its title. We are of the opinion that this objection is untenable.

2. This brings us to the objections raised under the Fourteenth Amendment to the Federal Constitution. Respondent's counsel urge that corporations are "persons" within the meaning of the words of this amendment that:

191 Mich.—24.

"No State shall deprive any person of life, liberty or property without due process of law; nor shall any State deny to any person within its jurisdiction the equal protection of the laws."

They refer to *Covington, etc., Turnpike Co.* v. *Sandford,* 164 U. S. 578 (17 Sup. Ct. 198), and *Smyth* v. *Ames,* 169 U. S. 466, 522 (18 Sup. Ct. 418), and claim that these cases are decisive of the instant case. They concede that:

"Classification for the purposes of legislation under the police power is permissible, provided all persons or things within the class are treated alike."

We are dealing here with a statute relating to elections, and the exercise of the police power of the State.

In Cooley on Constitutional Limitations (7th Ed.), p. 907, it is said:

"All such reasonable regulations of the constitutional right which seem to the legislature important to the preservation of order in elections, to guard against fraud, undue influence and oppression, and to preserve the purity of the ballot box, are not only within the constitutional power of the legislature, but are commendable, and at least some of them absolutely essential."

No class of questions has ever arisen more difficult of solution than those concerning Federal limitations of the police powers of the State. Mr. Justice Clifford, in *Tennessee* v. *Davis,* 100 U. S. 257, 300, observed that this power in its widest sense comprehends the whole system of internal regulations by which the State seeks, not only to preserve the public order and to prevent offenses against her authority, but also to establish for the intercourse of one citizen with another those rules of justice, morality, and good conduct which are calculated to prevent a conflict of interests and to insure to every one the uninterrupted enjoyment of his own, as far as it is reasonably con-

sistent with a like enjoyment of equal rights by others.' And he further said:

"Acts of Congress cannot properly supersede the police powers of the State, nor can the police powers of the State override the national authority, as the power of the State in that regard extends only to a just regulation of rights with a view to the due protection and enjoyment of all; and if the police law of the State does not deprive any one of that which is justly and properly his own, it is obvious that its possession by the State and its exercise for the regulation of the actions of the citizens can never constitute an invasion of national jurisdiction or afford a basis for an appeal to the protection of the national authorities."

Justice Brown, in *Lawton* v. *Steele,* 152 U. S. 133, 136 (14 Sup. Ct. 499, 500), said of the police power:

"It is universally conceded to include everything essential to the public safety, health, and morals."

After citing many instances of proper restraint and interference, he said:

"Beyond this, however, the State may interfere wherever the public interests demand it, and in this particular a large discretion is necessarily vested in the legislature to determine, not only what the interests of the public require, but what measures are necessary for the protection of such interests. * * * To justify the State in thus interposing its authority in behalf of the public, it must appear, *first,* that the interests of the public generally, as distinguished from those of a particular class, require such interference; and, *second,* that the means are reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals. The legislature may not, under the guise of protecting the public interests, arbitrarily interfere with private business, or impose unusual and unnecessary restrictions upon lawful occupations. In other words, its determination as to what is a proper exercise of its police powers is not final or conclusive, but is subject to the supervision of the courts."

The administration of justice, civil and criminal, within the State, is wholly under the control of the State, where there is no conflict with the Federal Constitution. The phrase "law of the land," in a State, in this regard, means the law of the State, and due process of law in the State is regulated by the law of the State. The power of the State in dealing with a crime is not limited by the Fourteenth Amendment, provided that particular persons or classes are not deprived of equal and impartial justice. Regular administration in the State courts constitutes due process, when operating on all alike. *Leeper* v. *Texas*, 139 U. S. 462 (11 Sup. Ct. 577). The extent to which the State may go under the police power, in declaring acts to be criminal, is very far-reaching, and is well illustrated in the following cases: *Commonwealth* v. *Franklin*, 4 Dall. (U. S.) 255; *Moore* v. *State of Illinois*, 14 How. (U. S.) 13; *Cummings* v. *Missouri*, 4 Wall. (U. S.) 277; *Hawker* v. *New York*, 170 U. S. 189 (18 Sup. Ct. 573).

The equality clause of the Fourteenth Amendment has received a broad interpretation by the courts. A classification of particular kinds of corporations, property, or trades is sustained provided it is reasonable in the view of the courts, and not merely arbitrary, and a wide latitude is allowed to the States in respect of classification, without criticism, by the Federal Supreme Court. *Bank of Redemption* v. *Boston*, 125 U. S. 60 (8 Sup. Ct. 772); *Palmer* v. *McMahon*, 133 U. S. 660 (10 Sup. Ct. 324); *Crowley* v. *Christensen*, 137 U. S. 86, 91 (11 Sup. Ct. 13); *Clark* v. *Kansas City*, 176 U. S. 114, 119 (20 Sup. Ct. 284). The general principle is that equal protection is not denied where the law operates alike upon all persons, corporations or property similarly situated. *Walston* v. *Nevin*, 128 U. S. 578 (9 Sup. Ct. 192); *Barbier* v. *Connolly*, 113 U. S. 27, 32 (5 Sup. Ct. 357); *Minneapolis, etc., R. Co.*

v. *Herrick,* 127 U. S. 210 (8 Sup. Ct. 1176) ; *People* v. *Phippin,* 70 Mich. 6 (37 N. W. 888) ; *Kuhn* v. *Common Council,* 70 Mich. 534 (38 N. W. 470).

A State may control a corporation which it has created, if constitutional provisions do not stand in the way, and in like manner it may control natural persons. *Boston Beer Co.* v. *Massachusetts,* 97 U. S. 25. Corporations, like the Lansing Brewing Company, are generally created under general laws passed by the legislature, and providing for articles of association. The Federal Supreme Court observes that such articles are in a sense *ex parte,* that their formation and execution frequently do not take place under the supervision of any official authority. *Oregon Railway, etc., Co.* v. *Railway Co.,* 130 U. S. 1 (9 Sup. Ct. 409). The powers of such corporations have been considered and strictly construed by the same court, and it has been held that the powers are simply such as the statute confers, and that the enumeration of them implies exclusion of all others. *Thomas* v. *Railroad Co.,* 101 U. S. 71; *Pennsylvania R. Co.* v. *Railroad Co.,* 118 U. S. 290, 309 (6 Sup. Ct. 1094).

The charter of corporations so formed consists of the statute under which the corporation exists and the articles of association by which it is formed. *Van Etten* v. *Eaton,* 19 Mich. 187. The police power of the State is exercised over such corporations with great freedom for the general good. The development of the law touching the police power over corporations, and concerning the doctrine announced in *Dartmouth College* v. *Woodward,* 4 Wheat. (U. S.) 518, came under review in the decisions holding that there is implied in the grant to a carrying corporation of the right to construct and operate a railroad, a grant of right to collect such tolls as will enable the company to successfully operate and return some profits to the investors. That there is such an implication has been

fully determined. *Reagan* v. *Loan & Trust Co.*, 154 U. S. 362, 393 (14 Sup. Ct. 1047) ; *Smyth* v. *Ames, supra.*

But it does not follow that because a corporation is by statute prohibited from contributing to a campaign fund that it is deprived of any property right. It has been held that a provision of a similar act, prohibiting persons at the polls from persuading any voter to vote or refrain from voting for any candidate or any political party, or on any measure submitted to the electors, should be liberally construed, with a view to its enforcement in the public interest, as tending to aid the purity of elections, and that the principle involved in the law was a salutary one, and that such statutes are closely connected with those prohibiting bribery. *Nelson* v. *Gass*, 27 N. D. 357 (146 N. W. 537, 541, Am. & Eng. Ann. Cas. 1915C, 796).

In Cooley on Constitutional Limitations (7th Ed.), p. 829, it is said:

"The police of a State, in a comprehensive sense, embraces its whole system of internal regulation, by which the State seeks not only to preserve the public order and to prevent offenses against the State, but also to establish for the intercourse of citizens with citizens those rules of good manners and good neighborhood which are calculated to prevent a conflict of rights, and to insure to each the uninterrupted enjoyment of his own, so far as is reasonably consistent with a like enjoyment of rights by others."

While our republican government guarantees the right to preserve one's own happiness, yet that government is charged with the duty of protecting others than appellant in the pursuit of their happiness, and hence the inalienable right to pursue one's own happiness must necessarily be subject to the same right in all others. Hence when that right is asserted in such a manner as to conflict with the equal right to the same

thing in others, it is not an inalienable right, nor a right at all, but is a wrong.

The instant case, in our opinion, does not present an instance of deprivation of property, nor of fanciful or unjust classification for purposes of regulation. The expenditure of the money of the Lansing Brewing Company for election purposes cannot be deemed to be a property right within the meaning of the Fourteenth Amendment. Such corporations have no right to participate in the elective franchise. We are not dealing with a measure that deprives a corporation of any of its property, or that impairs the value of that property. Neither are we dealing with the deprivation of any right or privilege granted by the laws under which such corporation was created and exists, as was the fact in the cases cited, and relied upon by counsel for respondent. In the case of *Covington, etc., Turnpike Co.* v. *Sandford, supra,* the general assembly of Kentucky by an act made it unlawful to demand, charge, collect, or receive tolls in excess of certain rates specified, and it was held that the rates were unjust and unreasonable, and such as to work a practical destruction of rights of property of the company, and that such legislation was not due process of law, and the doctrine contended for by respondent's counsel was announced. *Smyth* v. *Ames, supra,* was a suit by stockholders of the Union Pacific Railway Company and others, and dealt with the constitutionality of an act of the legislature of Nebraska to regulate and fix certain railroad freight rates. Both cases dealt directly with the property rights of the respective companies within the sphere and scope of their organization.

Not so in the instant case. The Lansing Brewing Company was created under our statute, for the purpose of manufacturing beer. The privilege was not conferred upon it of using its funds for the purpose

of influencing public sentiment in connection with any election. It is probable that the legislature had in mind the fact that it is matter of history that corporations have in many instances used their funds (acting through and by their officers) to influence elections, and that body believed that such practice was an abuse and menace to good government, which it sought to remedy by this legislation. The record, in our opinion, is a justification for the legislation complained of. We agree with counsel for the people wherein they say:

"If the respondent in this case, or the stockholders and officers of the Lansing Brewing Company desired, as individuals, to contribute to the campaign fund, it was their privilege so to do, subject to the regulations imposed by the statute. This artificial person, however, that was created for the purpose of manufacturing beer, has no such right; and it lies within the power of the legislature of this State to say that its funds should not be used for such a purpose."

It was for the legislature to say, in the exercise of the police power, whether such use of corporate funds opened the door to corruption and tended to destroy safeguards sought to be placed around elections to "protect the purity of the ballot." Does the statute deprive the respondent of any property right without due process of law? We answer this question in the negative.

3. It is further claimed that section 14 of the act is in conflict with section 4, art. 2, of the State Constitution. The individual activities of the officers of corporations are not prohibited. They may freely speak, write, and publish their views as provided for in the last clause of section 3. Section 11 provides how they may make their contributions, thus distinguishing *Louthan* v. *Commonwealth*, 79 Va. 196 (52 Am. Rep. 626). The corporation is not embraced within the provisions of section 4, art. 2, of the State Constitution. That section, in our opinion, relates to natural and not

to artificial persons, as does also the Fourteenth Amendment of the Federal Constitution in protecting the privileges and immunities of citizens from being abridged. *Western Turf Ass'n* v. *Greenberg,* 204 U. S. 359 (27 Sup. Ct. 384), and cases cited.

4. Finally, respondent's counsel contend that the whole act should be declared unconstitutional, that the act unduly and unreasonably restrains the political activities of the people, and "that it is one of those fool enactments that occasionally get through the legislature." Of the wisdom or folly of this legislation we are not called upon to speak. Measures of this kind have been enacted by the legislatures of many other States. Believing that such an enactment is a reasonable and valid exercise of the police power, that property rights are not interfered with, and finding no error in the record, the conviction of the respondent is affirmed, and the court below advised to proceed to judgment.

MOORE, STEERE, and PERSON, JJ., concurred with STONE, C. J.

BROOKE, J. (*dissenting*). In approaching the discussion in this case, my Brother STONE treats the statute as remedial in character, whereas it is in fact highly penal. Section 18 of the act provides that upon conviction for a violation of any of its provisions the person so convicted may be punished by a fine of not more than $1,000, or by imprisonment for not more than two years, either or both, at the discretion of the court. We have held in a great number of· cases that penal statutes must be strictly construed; in other words, that the liberty or property of the citizen shall not be taken from him, except for the violation of a statute so plain in its provisions that "he who runs may read"—so plain that no citizen charged with its violation may with reason say, "True, I committed the

act with the commission of which I am charged, but the legislature by the enactment in question did not intend to include me within its provisions." Among the many cases where penal statutes have been strictly construed by this court are the following: *Van Buren* v. *Wylie*, 56 Mich. 501 (23 N. W. 195) ; *People* v. *Gadway*, 61 Mich. 285 (28 N. W. 101, 1 Am. St. Rep. 578) ; *Crosby* v. *Railroad Co.*, 131 Mich. 288 (91 N. W. 124) ; *Van Camp* v. *Railroad Co.*, 137 Mich. 467, 470 (100 N. W. 771) ; *Robinson* v. *Harmon*, 157 Mich. 272 (117 N. W. 664) ; *Deloria* v. *Atkins*, 158 Mich. 232 (122 N. W. 559) ; *People* v. *Rice*, 161 Mich. 657 (126 N. W. 981) ; *Young* v. *Moore*, 162 Mich. 60 (127 N. W. 29) ; *People* v. *Blair*, 183 Mich. 130 (149 N. W. 1039). See, also, 26 Am. & Eng. Enc. Law (2d Ed.), p. 658.

I have read the title and the entire act under consideration with great care, and I am convinced that it was not the legislative intent to include local-option elections within its provisions. If this is the impression created in my mind by a perusal of the title and the act, it seems entirely reasonable to believe that respondent may have honestly acted under a similar impression. No citizen should be subjected to fine and imprisonment for the violation of a statute, the construction of which is open to so serious doubt as to its application as the one under consideration.

The judgment should be reversed, and the respondent discharged.

KUHN, OSTRANDER, and BIRD, JJ., concurred with BROOKE, J.