

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN, TEXAS 78711

JOHN L. HILL
ATTORNEY GENERAL

December 31, 1973

The Honorable A. R. Schwartz
Chairman
Jurisprudence Committee
Texas State Senate
Austin, Texas

Dear Senator Schwartz:

Opinion No. H- 189

Re:    Construction of "political
       committee" as used in
       H. B. 4, 63rd Leg., The
       Campaign Reporting and
       Disclosure Act of 1973

The 63rd Legislature adopted the Campaign Reporting and Disclosure Act of 1973 (Acts 1973, 63rd Leg, ch. 423, p. 1101) amending various articles of Chapter Fourteen of the Texas Election Code.

One of the principal changes was to make many provisions of the Chapter, theretofore applicable only to candidates, now applicable to "political committees."

Article 14.01 of the Code, as amended, defines a political committee as "any group of persons formed to collect contributions or make expenditures in support for or in opposition to a candidate or measure to be on a ballot in a public election."

Your letter, written on behalf of the Senate Jurisprudence Committee, states:

> "Various corporations, employee groups and professional associations have in the past formed political action arms separate and distinct from their basic organizations. In some instances these political action committees have been established to advance specific purposes common to all of their members, while in other cases the PAC was formed simply to encourage greater participation in the political process by its membership. In every instance these

political action groups are continuing organizations
which generally support multiple candidates in any
given elections and sometimes support multiple
candidates in the same race. Some of the PACs
were in existence long before the passage of House
Bill No. 4 in 1973, the Texas Campaign Reporting
and Disclosure Act of 1973; others were formed
shortly before the passage of the act and still others
may be formed in the future. None of these political
action committees were formed for the purpose of
supporting or defeating any particular candidate or
measure, and in most instances the committee was
formed prior to the time any person had become
a candidate as that term is defined in the 1973 Act.

"I am attaching a copy of the letter I sent as chairman
of the Senate Jurisprudence Committee to members of
the committee, explaining briefly why the Act fails to
indicate clearly whether political action committees
are included within the scope of the definition of a
'political committee.' In addition, the letter to the
committee indicates that if PACs are included within
the definition of a political committee, such inclusion
raises still further questions which ought to be answered.

"Therefore, I ask you on behalf of the Senate Jurispru-
dence Committee to consider the following questions:

"1. Is a political action committee such as
described above a 'political committee' for the purposes
of the Texas Campaign Reporting and Disclosure Act of
1973?

"2. If a political action committee is a 'political
committee' for the purposes of the Act, may funds legally
be contributed to it by its members or sponsoring organi-
zation for payment of its own operating expenses?

"3. If a political action committee is a 'political committee' for the purposes of the Act, are contributions made to such political action committee by its members and others legal political contributions under the Act?"

In determining the scope to be accorded "political committee" it is our obligation to "look diligently for the intention of the Legislature." Article 10, Vernon's Texas Civil Statutes.

The Code Construction Act (Article 5429b-2, V. T. C. S.) instructs us that, in this search,

(a) "Words and phrases shall be read in context and construed according to the rules of grammar and common usage. . . ." [§ 2.01]

(b) " . . . [I]t is presumed that

"(1) compliance with the constitutions of this state and the United States is intended;

"(2) the entire statute is intended to be effective;

"(3) a just and reasonable result is intended;

"(4) a result feasible of execution is intended; and

"(5) public interest is favored over any private interest. " [§ 3.01]

(c) "In construing a statute, whether or not the statute is considered ambiguous on its face, a court may consider among other matters the

"(1) object sought to be attained;

"(2) circumstances under which the statute was enacted;

"(3) legislative history;

"(4) common law or former statutory provisions, including laws upon the same or similar subjects;

"(5) consequences of a particular construction;

"(6) administrative construction of the statute; and

"(7) title, preamble, and emergency provision. "
[§ 3. 03]

Article 14.02 of the Election Code, prior to the 1973 amendments, permitted the appointment of a campaign manager by a candidate for election to a state or local office. As amended, the Article now requires designation of a campaign manager by candidates for election to such an office or in an election involving a statewide measure. This requirement is made to apply with equal force to political committees, as well.

Article 14.03 lists specific permissible expenditures to be made by candidates and their campaign managers. The 1973 Act adds political committees to the coverage of the Article and adds one permissible type of expenditure.

Article 14.04 specifies three types of contributions which may be made by persons other than corporations and labor unions, and requires that all other campaign expenditures must be made by a candidate, campaign manager, or campaign manager of a political committee.

Amended Articles 14.05 and 14.06 provide civil and criminal remedies, respectively, for illegal contributions or expenditures, but make no mention of political committees.

Article 14.07, as amended, makes it illegal for a corporation to give anything of value to any candidate, campaign manager or political committee or any other person for certain political purposes.

Article 14.08, paragraphs (a) and (b), requiring the keeping of records and the filing of statements, as amended, applies to political committees.

Paragraph (c) of Article 14.08, spells out what must be contained in a report by a candidate separately from what must be contained in a report by a political committee. The statement of a committee shall list all contributions received and expenditures made by the committee;

. . .        " . . . Each statement shall also include the dates and amounts of all expenditures, loans made, or debts incurred; the full names and complete addresses of all persons to whom any expenditures, or loans made of more than Ten Dollars ($10) was made or debt of more than Ten Dollars ($10) is owed; and the purpose of such expenditures, loans, and debts."

Paragraph (d) of Article 14.08 now reads:

"(d) Each political committee receiving contributions or making expenditures on behalf of a candidate shall notify the candidate as to the name and address of the political committee and its campaign manager. The candidate shall include within each statement required by this code a list identifying the name and address of each such political committee and campaign manager."

Other paragraphs of Article 14.08 set out the times when statements must be filed, and set the penalties for failing to file.

The definition of "political committee" found in the original version of House Bill 4 as it was introduced in the Legislature, spoke in terms of a "combination," the "primary or incidental purpose of which" was to support "any" candidate or measure. In the House committee both "candidate" and "measure" were made plural. (The language was substantially changed in the conference committee and these words were again made singular.)

It is readily apparent that "political committee, " as used in the context of Chapter 14 of the Election Code, may have several different meanings. It might mean a committee formed specifically to support one candidate or one measure to be the subject of an election. This would not include the so-called political action committees which have continuity and which may devote most or a large part of their resources to the support of an idea or issue and, coincidentally support those candidates who deal favorably with the issue. Other political action committees may be organized on broader grounds, as for example, to serve as the political arm of a professional or business association. Such a committee may be interested in many ideas and may support many candidates.

Subsidiary questions include: Is a group "formed to collect contributions" a political committee when that is only one of several of its purposes? Does the requirement that it be formed to make contributions in support for or opposition to "a candidate or measure" mean only one? Does a committee cease to be a "political" one within the Act, merely because it distributes its largess to many candidates?

The Secretary of State, charged by Subdivision 1 of Article 1.03, Vernon's Texas Election Code, with responsibility for the uniform application, operation and interpretation of the election laws, has issued his general directive under the Campaign Reporting and Disclosure Act of 1973. After quoting the statutory definition of "political committee" from the Act, his directive says:

> "Entities which are formed to collect contributions
> or make expenditures in support for or in opposition to
> candidates or measures to be on ballots are 'political
> committees'. The fact that the identity and/or number
> of such candidates or measures has not been determined
> at the time of the formation of any said committees does
> not exclude it from the definition of 'political committee'
> and coverage by the applicable requirements. "

We have been favored with a great deal of assistance from various segments of the community interested in this question, much of it favoring a limited construction.

Those urging a restricted view suggest the following grounds:

(a) A voluntary fund for political purposes "is a group of contributors, and not a committee which 'collects contributions' or 'makes expenditures' for a real political committee or a candidate."

(b) Had the Legislature intended that the coverage of the act include political action groups it should have done so in clear language.

(c) A political action committee is not formed for the limited purpose of supporting or opposing a candidate or measure, but is instead formed to advance common views of certain persons who voluntarily donate funds which may be used to support numerous candidates and public measures or which may be used to encourage greater voter participation.

(d) The language of section 3 of House Bill 4 (amending Article 14.02) indicates that a political committee "in any such election" indicates reference to an election involving but one candidate.

(e) The Act requires political committees to designate campaign managers. Since a political action committee does not "manage" an election, it is illogical to require it to have a campaign manager.

(f) If it were required to appoint a campaign manager, the Act apparently would require a political action committee to appoint one for each candidate it supported, even if it supported two men in the same race.

(g) The requirement that no contribution be received until after appointment of a campaign manager, if applied to a continuing political action committee, would prevent it from receiving funds, for example, for operating expenses.

(h) Since the Act is a penal statute it must be strictly construed. There is, at least, a substantial question as to whether political action committees were intended to be included within the definition of "political committee" and, therefore, they should be excluded.

(i) If the Act encompasses political action committees in the definition of "political committee" it is an unconstitutional infringement upon First Amendment rights.

(j) Section 8 of House Bill 4 (Article 14.07 of the Election Code) prohibits loans to candidates or committees by corporations except that a corporation legally engaged in the business of lending money may make a loan to a candidate, but not to a committee.  Therefore, if the broad interpretation is given to "political committee," the Act would violate both State and Federal Constitutions.

(k) The listing in the Act of campaign expenditures which a candidate or political committee may make does not include contributions to candidates, thus indicating that the Legislature did not intend inclusion of political action committees in the definition of a "political committee."

(l) The expenditures authorized by the Act do not cover legitimate and necessary "on-going" expenditures and indicate an intent that political action committees not be covered.

(m) The Act does not provide for the reporting of contributions by political committees to candidates, indicating an intent that political action committees not be covered.

(n) Inclusion of political action committees would impose on them unreasonable filing and reporting burdens.

Countering these arguments are the following by those who advocate a broad interpretation:

(1) The statutory definition of "political committee" refers to "any group of persons" and indicates an intent that the definition be all inclusive.

(2) The Act, considering its caption and provisions found throughout, was intended to "insure that all contributions and expenditures for political purposes are regulated, controlled and identified."

(3) Amended Article 14.08 of the Code, having to do with the statements to be filed, recognizes that political committees may have continuing existence. See, particularly, subsections (h)(4)(ii) and (h)(5).

(4) Historically, the Legislature has recognized and regulated the political activities of entities other than the candidate or his campaign manager. See, Article 211, Vernon's Texas Penal Code, repealed 1963; and Article 14.10, Election Code as amended in 1967.

(5) The enactment of House Bill 4 was made necessary, in large part, by the development of the political committee as a means of avoiding disclosure of campaign contributions by individuals.

All of these arguments, pro and con, have been helpful. We will discuss them later in this opinion.

Our attention has been called to the Federal Election Campaign Act of 1971, 2 U.S.C. § 431, et seq., which defines "political committee" as "any committee, association, or organization which accepts contributions or makes expenditures during a calendar year in an aggregate amount exceeding $1,000." [2 U.S.C. § 431(d)].

This statutory definition has been construed in only one reported discussion so far as we have been able to discover. In United States v. The National Committee for Impeachment, 469 F 2d 1135 (2d Cir. 1972), the Committee ran a newspaper advertisement calling for impeachment of the President. The United States sued under the federal act and the Committee was temporarily enjoined from accepting contributions or disbursing funds until it first filed the statements and reports required of political committees. The Court of Appeals reversed, holding that publication of the advertisement alone did not make the Committee a politica committee and warning that any other holding would raise serious constitutional questions.

In deciding that the words "made for the purpose of influencing," used in the statutory definitions of "contributions" and "expenditures," mean "made with the authorization or consent, express or implied, or under the control, direct or indirect, of a candidate or his agents," the Court quoted from Emerson, The System of Freedom of Expression, (Vintage ed. 1970), p. 640:

> "[R]egulations confined to candidates and election campaigns are directed to a limited end and deal with a limited situation. Hence they can be formulated with some objectivity and avoid the dangers of abuse in administration. This cannot be done with regulations . . . addressed to the innumerable different kinds of people seeking to express themselves for different purposes throughout the whole system of free expression."

The problem facing the Court in the National Committee for Impeachment case was whether the statute should be so broadly construed that it might infringe other constitutionally guaranteed rights. To avoid such a conflict it concluded that:

> "Congressional concern was with political campaign financing, not with the funding of movements dealing with national policy. Admittedly, under this interpretation, enforcement of the Act may be made somewhat more burdensome, as the supervisory officials will be forced to glean the principal or major purpose of the organizations they seek to have comply with the Act." (469 F. 2d at 1141-1142)

We feel that the same interpretation may and should be given to the Texas Campaign Reporting and Disclosure Act of 1973. The legislative concern was with political campaign financing, and not with the funding of other movements. To limit application of the Act to committees which are organized for the purpose of supporting only one candidate or measure in one election would be too narrow to achieve the legislative purpose. On the other hand to require any organization that ever contributed to any candidate or that ever supported the adoption of any measure to come under the Act, would be so broad as to possibly infringe upon First Amendment rights. See United States v. Robel 389 U.S. 258 (1967); Mills v. Alabama, 384 U.S. 214 (1966); NAACP v. Alabama, 357 U.S. 449 (1958).

We conclude that the overriding intent of the Legislature in enacting this statute was to require that all contributions to all candidates and all contribution made to influence a referendum on a measure be reported in such a manner as t

become public information. The climate in which the 63rd Legislature met and adopted this and other reform legislation was one of intense awareness of the recent Sharpstown scandal and the Watergate revelations. Reform was one of the principal issues to the Texas voters in the 1972 elections.

With this background, we do not believe the Legislature intended to limit the requirements of the Campaign Reporting and Disclosure Act of 1973 so that continuing political action committees, through which massive sums might be collected and distributed to candidates, might continue to operate without regulation.

As we interpret the Act, political action committees may be, but are not necessarily, subject to its provisions. Conceivably, such a group formed to achieve its purposes through educating the public generally and not for the election of a candidate or adoption of a measure, may never come within its coverage.

But, according to our interpretation, once a group has as one of its principal or major purposes the collection of contributions and/or the making of expenditures for one or more state or district candidates or one or more measures to be voted upon at an election, it must follow the requirements of the Act insofar as it collects and expends funds for those purposes. Thus, the question of whether an organization, called a political action group or something else, must be considered a "political committee" for the purposes of the Texas Campaign Reporting and Disclosure Act of 1973 at any particular time will be a question of fact to be determined in each case by what are the principal and major purposes of the organization at that time and whether one of them is to collect contributions and make expenditures in political campaigns, involving measures as well as candidates,

Whether or not it is appropriate to require a committee supporting more than one candidate or measure to appoint a single campaign manager or one manager for each candidate is a matter for legislative wisdom. We believe the Legislature intended multiple managers where appropriate. We have examined all of the arguments made in favor of the limited construction (summarized above) and find none that convinces us that the Legislature intended that all the campaign contributions and expenditures which are and may be funneled through a political

committee were to escape public scrutiny merely because the political committee is continuing and supports multiple candidates and measures.

Our conclusion is also supported by the often-cited case of People v. Gansley, 158 N. W. 195 (Mich. 1916).

We have not been asked to elaborate upon the manner in which political action groups should comply with the Act, and we shall not do so. We do point out, however, that the Act, itself, quite clearly indicates its application. For example, the expenditures limited by amended Article 14.03 of the Code are "campaign expenditures"; Article 14.04 prohibits a political committee from receiving "campaign contributions" from corporations and labor unions; the inhibition against loans, found in amended Article 14.07, is against loans, "for the purpose of aiding or defeating the nomination or election of any candidate or of aiding or defeating the approval of any political measure submitted to a vote of the people of this state or any subdivisions thereof"; and so on.

We answer your questions:

1. Whether or not the political action committees which you have described are "political committees" for the purposes of the Texas Campaign Reporting and Disclosure Act of 1973 will depend upon a factual determination of whether, at the particular point in time, they have as principal or major purposes (not necessarily the exclusive purpose) the collection of contributions and expenditure of funds in political campaigns.

2. An organization deemed a "political committee" under the Act is limited in the "campaign expenditures" which it may make but not as to other expenditures which are otherwise legal.

3. Campaign contributions made to a political action group which is a "political committee" under the Act, if otherwise legal, are legal political contributions.

## SUMMARY

Organizations having among their principal or major purposes the collection and expenditure of funds in political campaigns covered by the Campaign Reporting and Disclosure Act of 1973, are "political committees" under the Act and are subject to its terms. Such an organization which has other purposes is not limited by the Act as to the receipt of contributions or the expenditure of funds for those other purposes.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

LARRY F. YORK, First Assistant

DAVID M. KENDALL, Chairman
Opinion Committee